R. Brent Wisner (SBN: 276023)
rbwisner@wisnerbaum.com
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Attorney Pro Se*

*\*Additional attorneys' contact information
on signature page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. BRENT WISNER, an individual; WISNER BAUM, LLP, a California limited liability partnership; and ELEOS LAW LLP, an Arizona limited liability partnership;<br><br>                    Plaintiffs,<br><br>         v.<br><br>ROB BONTA, in his official capacity as Attorney General of California; and STATE BAR OF CALIFORNIA, a public California Corporation;<br><br>                    Defendants. | **CASE NO.** 2:25-cv-11358<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

JURISDICTION AND VENUE........................................................................4

PARTIES ...........................................................................................................5

FACTS................................................................................................................7

    I.   Arizona's Alternative Business Structure Allows Law Firms to Ethically
        Evolve with the Changing Mass Tort Legal Landscape, Create New
        Technologies, and Improve Client Outcomes and Experiences..........................7

    II.  Mr. Wisner Formed Eleos Law to Create a Law Firm Focused on Case
        Management Work with the Express Goal of Improving the Experience of
        Clients in Mass Tort Cases .................................................................11

    III. AB 931 Threatens to Undermine Effective Case Management for Modern Mass
        Tort Practice and Directly Prevents Out-of-State Lawyers from Collaborating
        or Hiring California Attorneys ...........................................................15

    IV. AB 931 Will Cause Concrete Harm to Plaintiffs ..............................18

CAUSES OF ACTION .....................................................................................23

    COUNT I:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 –
        Violation of the Dormant Commerce Clause of the United States Constitution
        (Brought by All Plaintiffs Against All Defendants)..........................23

    COUNT II: Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 –
        Violation of Privileges and Immunities Clause of the United States
        Constitution (Brought by Mr. Wisner Against All Defendants) ......................27

    COUNT III:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 –
        Violation of the Contract Clause of the United States Constitution (Brought by
        All Plaintiffs Against All Defendants) .............................................31

    COUNT IV:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 –
        Violation of the First Amendment (Brought by All Plaintiffs Against All
        Defendants).................................................................................34

COUNT V:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Fifth and Fourteenth Amendments (Brought by All Plaintiffs Against All Defendants) ..................................................................36

    A.  Takings Clause ...................................................................37

    B.  Substantive Due Process (Economic Liberty)................................38

    C.  Irreparable Harm and Relief................................................39

COUNT VI:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Full Faith and Credit Clause of the U.S. Constitution (Brought by All Plaintiffs Against All Defendants) ........................................39

**REQUEST FOR RELIEF ..........................................................42**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**<u>INTRODUCTION</u>**

1.      This action seeks to stop California from enforcing an unconstitutional restriction on the ability of California lawyers and out-of-state law firms to practice law and represent injured people.  In an attempt to protect consumers from the potential effects of non-lawyer legal representation—a otherwise noble goal—the California legislature passed a law that goes too far.  It crosses multiple Constitutional redlines and, despite its best intentions, results in undermining California lawyers' ability to better represent clients in a mass tort setting and accept referrals, decreasing the quality of legal services provided to consumers directly, and fostering a destructive and illegal protectionist view of the practice of law that cannot be squared with commonsense or the U.S. Constitution.

2.      Assembly Bill 931 ("AB 931") is a new law that, effective January 1, 2026, forbids California lawyers from sharing any fees, directly or indirectly, with any law firm that has, in any part, ownership by nonlawyers or where any decision-making is performed by nonlawyers (even if the decision-making is supervised by an attorney).  The law is a direct attack on legislation passed by Arizona and Utah in 2020, and is an overreaction to legitimate concerns within the California Bar that unlicensed non-attorneys could displace the State-sanctioned monopoly of the practice of law in California at the expense of zealous and ethical client representation.

3.      For the past five years, Arizona and Utah have allowed a limited number of law firms to form alternative business structures ("ABS"), which permits law firms to be owned, in whole or in part, by non-lawyers.[1]  In Utah, there are 11 ABS law firms.  In Arizona there are 114 ABS law firms.  Some core regulatory safeguards include:

---

[1] Washington, D.C. has, since 1991, allowed non-attorney ownership of law firms if the non-lawyer provides professional services that help the firm deliver legal services to their clients.  There is no formal ABS structure. D.C. R. Pro. Conduct 5.4(b).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

- **Attorney Control.** Regardless of ownership, all legal decision-making within an ABS law firm must be controlled and dictated by licensed attorneys. This is enforced through the imposition of an onsite compliance attorney.
- **Mandatory Audits.** All ABS law firms are subject to rigorous biannual audits designed to ensure that all rules of professional responsibility are complied with and all legal decision-making is made by attorneys.
- **Heightened Scrutiny.** ABS law firms are subject to annual or bi-annual reviews before special committees to review the work performed by the ABS law firm and ensure compliance with special rule obligations imposed on ABS law firms.

In other words, an ABS law firm in Arizona and Utah is subject to a level of scrutiny and regulation that dwarfs traditional all-attorney-owned law firms.

4. Plaintiffs, here, are a California law firm (Wisner Baum, LLP), an Arizona ABS law firm (Eleos Law, LLP)—which is majority owned and entirely controlled by California-licensed attorneys—,and a California attorney (R. Brent Wisner) who leads both law firms. Wisner Baum and Eleos Law work together to service approximately 20,000 Plaintiffs with claims pending and/or settling in various mass tort litigations. The relationship between Wisner Baum and Eleos Law reflects the inherent duality required in mass tort litigation generally. Wisner Baum is the traditional litigation wing—focusing on litigating cases against large corporate defendants and pressing matters to trial. These skillsets focus on litigation, i.e., discovery, experts, motions practice, trial, appeals, etc. Eleos Law, on the other hand, is the client-focused wing—focusing on preparing each individual plaintiff's case within the mass tort setting and keeping clients informed and engaged. This includes individual legal issues such as ensuring compliance with statutes of limitations, resolving any individual underlying legal concerns (probate, guardian *ad litem*, minor's compromises, etc.), responding to case-specific discovery, i.e., collecting medical records, completing case-specific discovery request through fact sheets or

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

other mass tort discovery mechanisms, collecting witness declarations, etc., and advising clients about their case as it works through the labyrinthian mass tort world, often spanning multiple jurisdictions and many years.  The skillset and technology required to effectively prosecute a case against a Fortune 100 company is very different than what is required to properly take care of people—most of whom have suffered devastating and/or life changing injuries.  By allowing different law firms to focus on these areas of law, the goal of the Wisner Baum and Eleos collaboration is unified:  provide better legal service to injured clients and get those clients the best possible resolution, with minimum costs to those clients.

5.     Born of protectionist views about non-lawyer ownership of law firms outside of California and a legitimate, albeit overblown fear, about the corporate takeover of law, the California legislature passed AB 931 in eight months without debate.  The law imposes a rigid regulatory bar that bears no resemblance to how multidistrict and coordinated litigation actually functions.  The result is predictable:  California lawyers will pull back from ABS law partners, nationwide plaintiff teams will fracture, and clients will lose access to efficient, cost-saving, and higher quality legal services.  For a law that aims to protect California consumers, it accomplishes the opposite.

6.     AB 931 is fundamentally unconstitutional and cannot be enforced.  It oversteps California's authority to interfere with interstate commerce—a power delegated to Congress—by discriminating against Arizona and Utah ABS law firms in clear violation of the Dormant Commerce Clause.  It burdens the fundamental right to practice law in California and to collaborate across state lines, violating the Privileges and Immunities Clause.  It impairs existing contractual expectations, restricts professional expression and association, and arbitrarily interferes with Plaintiffs' property and liberty interests—contrary to the Contract Clause, the First Amendment, and the Fifth and Fourteenth Amendments.  It also disregards sister states' sovereign regulatory decisions to license ABS law practices, in violation of the Full Faith and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Credit Clause.

7.    California cannot justify this protectionist statute, which harms the very attorneys and clients it claims to protect.  Unless enjoined, AB 931 will immediately and irreparably disrupt ongoing contracts, chill lawful interstate collaboration, and impede Plaintiffs' work in nationwide mass-tort litigation.  If nothing is done, Plaintiffs must either continue to work collaboratively pursuant to their contracts and risk State Bar discipline and $10,000-per-violation statutory damages under Business and Professions Code section 6156, or dismantle functioning case-management systems mid-stream to the detriment of thousands of injured consumers whose claims depend on them.

8.    Plaintiffs, therefore, seek declaratory and injunctive relief preventing enforcement of AB 931 and declaring it unconstitutional.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331 and 1343 because Plaintiffs' claims arise under 42 U.S.C. section 1983 and the United States Constitution. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. section 1367.

10.    This Court has the authority to grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. section 2201 and 2202, as well as Federal Rules of Civil Procedure 57 and 65, including pursuant to the Court's inherent equitable powers.

11.    Defendants are subject to the personal jurisdiction of the Court because Defendants are "at home" in California as they are residents of and perform their official duties in California.

12.    Venue is proper within the Central District of California pursuant to 28 U.S.C. section 1391 because Defendant State Bar of California and Plaintiff Wisner Baum are located in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

13.     Plaintiffs bring this suit on behalf of themselves because, as explained herein, they have suffered and continue to suffer concrete, particularized injuries that are fairly traceable to AB 931.  Plaintiffs intend to continue the fee-sharing arrangement between them after January 1, 2026.  To continue serving their clients, Wisner Baum and Eleos wish to maintain their collaboration, placing them at imminent risk of State Bar discipline under AB 931, Business and Professions Code section 6156, plus statutory damages of $10,000 per violation.  On the other hand, if Plaintiffs were forced to comply with the law, they would be forced to forgo valuable contracts, Wisner Baum would need to restructure their entire case management system, and Eleos would lose necessary fees to continue operations.  Thus, Plaintiffs have standing to bring the claims asserted in this Complaint.

## PARTIES

14.     Plaintiff Wisner Baum, LLP[2] ("Wisner Baum") is a California limited liability partnership headquartered in Los Angeles, California that employs approximately 20 attorneys, of which 15 have a license in California.  Wisner Baum represents plaintiffs nationwide in complex and catastrophic matters, including mass torts, toxic torts, aviation and transportation disasters, pharmaceutical and medical-device product liability, class actions, and whistleblower/qui tam litigation.  Wisner Baum has been ranked among the *Best Law Firms* in the country for mass tort and class-action litigation by *U.S. News – Best Lawyers®*, reflecting its depth of experience in managing large, multi-jurisdictional caseloads and its history of obtaining significant verdicts and settlements for injured plaintiffs.  Wisner Baum is fully owned by California attorneys.

15.     Plaintiff Eleos Law LLP ("Eleos Law") is an Arizona limited liability

---

[2] Wisner Baum was previously Baum, Hedlund, Aristei & Goldman, P.C. ("Baum Hedlund"), which was established in 1985 and was actively practicing law in California until December 2022.  Wisner Baum was formed as a Partnership from the same attorneys and staff of Baum Hedlund in 2023, and upon its inception, Mr. Wisner became its Managing Partner.

partnership headquartered in Phoenix and licensed as an Alternative Business Structure ("ABS") under Arizona Supreme Court rules. Founded by Plaintiff R. Brent Wisner, Eleos Law was created to address the significant operational demands of large-scale mass-tort litigation by combining attorney oversight with modern technological capacity. Eleos Law provides specialized co-counsel case-management services—including plaintiff intake, fact-sheet preparation, medical-record review, deadline tracking, and ongoing client communication—through a first-of-its-kind, tech-enabled, human-in-the-loop case management platform developed by experienced litigation attorneys and software engineers. Eleos Law has non-attorney ownership, with 46% of the law firm owned by non-lawyers. The remaining 54% of Eleos Law is owned by California-licensed attorneys. Eleos Law currently employs four full-time attorneys licensed in various states including California, Arizona, New York, Pennsylvania, Massachusetts, and Washington, D.C. Eleos Law employs approximately 70 people, primarily in Arizona and California.

16.    Plaintiff R. Brent Wisner ("Mr. Wisner") is an attorney—licensed in California, Pennsylvania, and the District of Columbia—and a California resident. Mr. Wisner is a member of good standing in each state bar and has never been disciplined or sanctioned. Mr. Wisner is admitted to the United State Supreme Court, the First, Seventh, Ninth, and Eleventh Circuit Court of Appeals, and numerous other federal district courts, including the Central District of California. Mr. Wisner is the Managing Partner and lead trial attorney at Wisner Baum and a General Partner of Eleos Law. Mr. Wisner holds a 35% ownership interest in Wisner Baum and a 41% ownership interest in Eleos Law. Mr. Wisner is nationally recognized for his work in complex, high-stakes litigation, including mass torts and product liability cases. He has secured multiple verdicts totaling more than $2.4 billion and negotiated mass-tort settlements exceeding $2 billion. Mr. Wisner has been appointed by Courts to various leadership roles, including lead / liaison counsel, in various multidistrict litigation ("MDL") proceedings and California Judicial Council Coordinated Proceedings

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

("JCCPs").  Mr. Wisner has been repeatedly recognized for excellence in trial practice, including being named one of America's 50 Most Influential Trial Lawyers by *Trial Lawyer Magazine*, "Civil Plaintiffs Trial Lawyer of the Year" by ALM and National Trial Lawyers, a "Titan of the Plaintiffs Bar" by *Law360*, a "West Trailblazer" by *The American Lawyer*, and a recipient of the Clarence Darrow Award by Mass Torts Made Perfect.  He is consistently listed in the *Daily Journal*'s lists of Top Plaintiffs Lawyers in California.

17.     Defendant, the Hon. Rob Bonta ("AG Bonta"), is the Attorney General of California.  In his official capacity under the California Constitution, AG Bonta is "the chief law officer of the State," and, in that capacity, has a "duty . . . to see that the laws of the State are uniformly and adequately enforced."  Cal. Const. art. V, §13. AG Bonta is a resident of California, and his principal place of business is 1300 I Street, Sacramento, California 95814.  At all relevant times, AG Bonta, as well as those subject to his supervision, direction, or control, are and will be acting under color of state law.

18.     Defendant State Bar of California ("Bar"; collectively, with AG Bonta, "Defendants") is a public corporation established by Article VI, Section 9 of the California Constitution. The Bar enforces the California Rules of Professional Conduct, investigates and pursues disciplinary violations, and has authority to discipline attorneys for violations of the Business and Professions Code, including newly enacted section 6156 as amended by AB 931. The Bar maintains its principal offices in San Francisco and Los Angeles. At all relevant times, the Bar, as well as those subject to its supervision, direction, or control, are and will be acting under color of state law.

## FACTS

I.     **Arizona's Alternative Business Structure Allows Law Firms to Ethically Evolve with the Changing Mass Tort Legal Landscape, Create New Technologies, and Improve Client Outcomes and Experiences**

19.     Mass-tort litigation today bears little resemblance to the kind of smaller,

7

single-venue disputes that once dominated civil litigation.  From the early Agent Orange, tobacco, and asbestos cases to the modern BP Oil Spill, Roundup, and Talcum Powder litigations, defendants increasingly cause alleged injuries throughout the country that, inevitably, spawns nationwide litigation.

20.    With greater and more widespread harm caused to consumers, there are also more consumers exercising their rights today than ever before.  Historically, consumers only learned that a product was a cause of their injury after becoming aware of ongoing litigation through word of mouth or news reports.  However, with the increase of legal advertising, awareness of issues through technology,  and high-stakes litigation, more and more consumers are learning about their potential claims than ever before and, in turn, are seeking representation.  Some commentators—primarily funded by corporate defendants—lament the rise of mass tort cases, claiming that it leads to frivolous claims.  Others, focused on access to justice, cite the growing number of mass tort cases as a positive externality associated with the information age—where informed consumers are can access the Courts to redress the types of harms that corporate misfeasors were historically able to evade.  Regardless of which side of the "tort reform" divide one occupies, the simple fact remains:  more people are participating in mass tort lawsuits now than ever before, and Courts are grappling with ways to manage massive dockets, move litigation forward efficiently, while preserving due process rights for both plaintiffs and defendants through coordinated proceedings.

21.    Federal courts utilize the MDL process—a procedural framework created in 1968 by Congress, to centralize civil actions involving common questions of fact before a single Federal judge for coordinated proceedings, as determined by a specially-appointed Judicial Panel on Multidistrict Litigation.  *See* 28 U.S.C. § 1407 *et seq.*  California courts, similarly, use the JCCP process, which also allows coordination and, at times, consolidation of similar claims before a single Superior Court Judge, as determined by the Judicial Council.  *See* Cal. Civ. Proc. Code § 404 *et seq.*  Many different states have adopted similar procedures to coordinate and streamline state

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

court cases involving similar cases.

22.     As a result, modern plaintiffs' mass tort lawyers must practice across jurisdictions, carefully selecting the optimal venue and applicable substantive law to best represent injured plaintiffs.  This, necessarily, involves coordinating thousands of parallel cases in multiple state courts and MDLs, with varying legal standards and procedures, utilizing new technologies, and working with co-counsel, experts, and other often highly innovative partners throughout the country.  It is almost impossible for a single lawyer or law firm to singlehandedly manage every component of these cases from case-specific work-up to general liability and causation across multiple jurisdictions, nor is such an approach likely to lead to the best result for a plaintiff. This is why mass tort practice has evolved into numerous co-counsel relationships, creating multi-law firm teams of attorneys, paralegals, case managers, and technology-driven support systems to meet the demands of complex litigation and coordination. As technology and the scale of harms have grown, the structure of plaintiffs' work has had to evolve as well.  These multi-law firm teams work together to bring about massive resolutions for their respective clients and, along the way, ensure each client is ready to secure a resolution should one become available or, if not, proceed to trial.

23.     Historically, legal ethics rules prohibited attorneys from forming law firms or associations with non-attorneys or from sharing legal fees with them. However, the assumption that only lawyers can provide valuable legal services to clients has been severely questioned, much like the notion that nurse practitioners cannot treat patients because they are not physicians.[3]

24.     Moreover, there has been an alarming lack of technological development

---

[3] *See* Rhode Center on the Legal Profession, *Relaxing the Ban on Non-Lawyer Ownership: Allowing Lawyers to Lead Innovation*, Center on the Legal Profession, Stanford Law School (2023), https://clp.law.stanford.edu/relaxing-the-ban-on-non-lawyer-ownership/; *see also* E.S. Adams, *A Proposal for Nonlawyer Investment in Law Firms*, Univ. of Minnesota Law Faculty Articles 1, 18-19 (1998); *see also* Nick Robinson, *When Lawyers Don't Get All the Profits: Non-Lawyer Ownership, Access, and Professionalism*, 29 Geo. J. Legal Ethics 1, 52–53 (2016).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

in the legal field—a consequence of technologists being largely excluded from the market due to the restriction on nonlawyer ownership of law firms.[4]  The most talented software developers and technologists are drawn to environments like Silicon Valley, where equity and ownership are primary economic incentives.  Law firms, prohibited from making non-lawyer partners, cannot compete.

25.    This lack of technological development, especially in the world of mass torts, harms clients.  It has resulted in delayed settlement programs and lien resolution, due to delayed medical record collection and review, and time-consuming and repetitive discovery obligations, i.e., fact sheets, claim forms, intake, etc.  It also leads to clients feeling disengaged from the litigation, which can often sprawl over the course of a decade.  Many of these problems within mass torts, however, can be solved or improved with technology.  Existing technologies can expedite many of the time-intensive and tedious projects while providing a plaintiff greater opportunities to engage with their case through transparency and access to their own casefile.

26.    As a result of shifts in the legal services landscape, including the mass tort arena, and based on the push for greater access to justice and technological innovation, the bars of some states have relaxed restrictions on nonlawyer ownership of law firms.  This legal innovation allows non-attorney ownership interest in entities providing legal services within that jurisdiction.  Robert Teuton, *One Small Step and a Giant Leap: Comparing Washington, D.C.'s Rules 5.4 with Arizona's Rule 5.4 Abolition*, 65 Ariz. L. Rev. 223, 226 (2023).

27.    Pertinent to this case, Arizona passed a law that permits attorneys and non-attorneys to form legal services entities known as alternative business structures ("ABS"). A.R.S. Sup.Ct.Rules, Rules 31.1, 33.1; ACJA § 7-209; *see also Alternative*

---

[4] *How Technology Is (or Is Not) Transforming Law Firms*, Annual Review of Law & Social Science 299, 303-04, 309-11(May 17, 2023); S. Bender, *Access to Legal Services - The Role of Innovation and Technology*, 2021 14-15; Divyani Pathak, *The Development of Legal Tech Startups and Their Impact on Traditional Law Firms*, Law Technology Today (Mar. 28, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Business Structures*, Arizona Judicial Branch (last visited Nov. 14, 2025, 7:57 PM), https://www.azcourts.gov/cld/Alternative-Business-Structure.

28.     Arizona allows "[a]n entity that includes nonlawyers who have an economic interest or decision-making authority as defined in ACJA 7-209 [to] employ, associate with, or engage a lawyer or lawyers to provide legal services to third parties only if: (1) it employs at least one person who is an active member in good standing of the State Bar of Arizona under Rule 32 who supervises the practice of law under ER 5.3; (2) it is licensed pursuant to ACJA § 7-209; and (3) legal services are only provided by persons authorized to do so and in compliance with the Rules of Supreme Court." A.R.S. Sup.Ct.Rules, Rule 31.1(c).

29.     Arizona's regulatory framework for ABS entities is far more rigorous than the traditional rules that govern only-lawyer-run firms.  ABS entities must appoint a "Compliance Attorney," who is an active Arizona-bar member responsible for ensuring the entity's compliance with the rules governing ABSs, Supreme Court Rule 42, and for reporting violations to the Arizona Supreme Court.  ACJA § 7-209(G)(2)-(3).  ABS entities are also subject to initial investigation, annual reporting, and financial and operational audits conducted by the ABS Licensing Committee.  ACJA § 7-209(D).  Licenses are granted for two-year terms and must be renewed through application to, and approval by, the Arizona Supreme Court, which retains authority to suspend, revoke, or decline renewal of any ABS license for non-compliance.  ACJA § 7-209(F), (H).  These requirements—unique to Arizona's ABS regime—go far beyond those imposed on typical law firms.  They ensure that entities with nonlawyer ownership remain transparent, accountable, and ethically supervised, while still enabling the development of new technologies and business models that traditional law-firm rules have long prevented.

## II.    Mr. Wisner Formed Eleos Law to Create a Law Firm Focused on Case Management Work with the Express Goal of Improving the Experience of Clients in Mass Tort Cases

30.     Before Eleos Law, Wisner Baum relied on in-house case managers and

attorneys to manage a substantial docket of cases.  This included building *ad hoc* infrastructure and on the job training programs to deal with the ever-changing landscape in each mass tort litigation and hiring, as needed, third-party vendors to deal with projects and issues as they arose.  That patchwork was inherently inefficient, especially considering the demands of ongoing corporate-facing litigation and complex liability and science work.  Eleos was created precisely to allow Wisner Baum to move beyond that "do everything in-house" model and instead leverage specialized scalable support.

31.    It became clear that the best way to advance the field of case management and create better experiences for Wisner Baum's clients was to create a law firm that could focus on that aspect of legal practice.  This would not increase any costs to the client—it would simply make their journey better, easier, and quicker.  This was the genesis of Eleos Law.  Specifically, Mr. Wisner determined to create a case management law firm supervised by seasoned case-management lawyers, staffed by case management professionals, and supported by innovative technologists employed by the firm to develop case management software applications all for the explicit purpose of providing superior service, increasing transparency and client engagement, reducing costs, and obtaining better outcomes.

32.    Existing case-management vendors, which are *not* law firms, had proven ineffective.  Despite Wisner Baum's prior use of several such vendors, they lacked the same stakes in the litigation.  This meant they had neither the incentives nor the professional obligations necessary to drive the zealous advocacy and ethical prosecution of a case that are built into the very framework a Plaintiffs' law firm.

33.    So, drawing on Wisner Baum's extensive experience with case management in the mass tort field, in August 2023, Mr. Wisner formed Eleos Law.  Mr. Wisner selected the Arizona ABS law firm structure because it would allow Eleos Law to recruit talent and investment from nonlawyers and incentivize nonlawyer partners—talent underutilized in the legal profession—to help improve the practice of

case management; a practice that is fundamentally limited by the realities of time-intensive data collection and review, i.e., tasks that are especially susceptible to technological solutions and AI-driven technologies.  To date, Eleos Law has not accepted any financial investment from non-lawyers; although it may one day in the future if the need for capital arises.  Instead, the non-attorney owners of Eleos Law provide specialized insight and knowledge for their respective industries.

34.    Consistent with the mission of improving case management, Eleos Law has spent millions developing technology designed to improve efficacy and engagement with clients.  The firm's Chief Technology Officer—a software engineer with more than thirty years of experience—is a partner at Eleos Law and oversees an in-house team of technologists dedicated to bringing plaintiffs' case management into the modern technological age.  For example, Eleos Law developed a phone app, which allows individual clients to, at any time, access their files, communicate with their attorneys and case managers, upload documents, fill out forms, sign needed documentation—all from the convenience of their cell phone.  The following screenshots, using a fake profile, illustrate some of these functions:



COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

  

35.    As an ABS law firm, Eleos Law has both attorney and non-attorney General Partners, as allowed under Arizona law.  Eleos Law's ABS structure allows lawyers and non-lawyers with other critical skills to jointly own, potentially invest in, and expand the company.  Without the ability to offer equity—the way Silicon Valley companies have been doing for decades—it is nearly impossible to recruit and engage technology specialists.  Developing and incorporating technology, Eleos Law is able to better take care of clients, facilitating the high-volume tasks of plaintiff intake, fact sheets, medical record review, and ongoing plaintiff communication. These tasks all have attorney oversight and control, but at the same time, Eleos Law benefits from engineering talent and workflow automation that an ABS structure can support.

36.    Wisner Baum and its clients currently contract with Eleos Law to handle case management for nearly 20,000 cases.  Specifically, pursuant to a governing contract, Eleos Law is currently overseeing the settlement of approximately 9,400 cases involving plaintiffs that developed cancer from taking a drug called Zantac. Eleos Law helps these clients navigate five different master settlement agreement frameworks among different defendants, which includes preparing claim forms, reviewing and supplying medical records, reviewing releases, planning for proceeds,

addressing potential liens, and answering client questions about the settlement. These settlements will need administration and individual attention for years to come. Eleos Law is also actively co-representing approximately 8,450 cases involving claims that the toxic heavy metals in baby food caused varying degrees of serious injury to children. These 8,450 cases involve minors and their families, which implicates even more individualized legal and case management issues. Eleos Law is collecting information, medical records, obtaining product purchase records, and helping clients file complaints and serve discovery responses in the ongoing baby food MDL and California JCCP proceedings. As part of that case management, the Wisner Baum and Eleos Law Case Management Services Contract ("Contract") provides for a flat per client case management fee and for Eleos to receive a 5% share of legal fees. Each client also signs a separate agreement with Eleos Law acknowledging the co-counsel relationship, costs, and division of fees, as required by California law. Every day, new contracts are signed with baby food clients. Plaintiffs anticipate that those contracts will continue to be signed after January 1, 2026.

### III.   AB 931 Threatens to Undermine Effective Case Management for Modern Mass Tort Practice and Directly Prevents Out-of-State Lawyers from Collaborating or Hiring California Attorneys

37.    AB 931 threatens not only the co-counsel relationship between Wisner Baum and Eleos Law—a relationship designed to improve client representation—but the broader ability of California firms to participate in ABS-supported mass-tort work or referrals.

38.    In October 2025, California passed new legislation titled the "State Bar Act: consumer legal funding", Assembly Bill 931 ("AB 931"), which amends the California Business and Professions Code relating to attorneys. 2025 Cal. Legis. Serv. Ch. 565 (A.B. 931). AB 931 becomes effective on January 1, 2026.

39.    According to the Legislative Counsel's Digest, AB 931, as pertinent to this Case, "until January 1, 2030, prohibit[s] an attorney licensed or otherwise authorized to practice in the state from sharing legal fees directly or indirectly with an

out-of-state entity that provides legal services while allowing nonlawyer ownership or decisionmaking authority, except as specified.  The bill . . . specif[ies] that the above-described prohibition of the sharing of legal fees only applies to contracts entered into on or after January 1, 2026.  The bill . . . make[s] a violation of that prohibition of the sharing of legal fees cause for the imposition of discipline by the State Bar of California and would subject a violator to specified penalties."

40.    AB 931 expressly targets ABS law firms like Eleos Law by adding the following language to California Business and Professions Code section 6156:  "No attorney licensed or otherwise authorized to practice in this state shall share legal fees directly or indirectly with an out-of-state alternative business structure unless all of the following apply:  (1) The attorney is also licensed in the state in which the alternative business structure is approved. (2) The fees are compensation for the provision of legal services in that state. (3) The law of that state is controlling pursuant to Rule 8.5 of the California Rules of Professional Conduct or any successor rule."

41.    AB 931 defines "alternative business structure" to mean "any entity that provides legal services while allowing nonattorney ownership or decisionmaking authority. . . . [except] nonprofit organizations."

42.    AB 931 also adds harsh monetary penalties to any California attorney or law firm that violates it: "(b) A violation of this section shall constitute cause for the imposition of discipline by the State Bar of California and shall subject the attorney to the following penalties: (1) Statutory damages of ten thousand dollars ($10,000) per violation or three times the actual damages incurred by the consumer, whichever is greater. (2) Attorney's costs and fees. (3) Injunctive or declaratory relief."

43.    Moving forward, California lawyers will now have to police referral sources and will, necessarily, be less competitive in the mass tort marketplace. California lawyers, unlike other lawyers in other states, will need to investigate any law firm that wishes to refer a case to them to determine whether they meet the exceedingly broad definition of an ABS, as defined by California law.  California

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

lawyers will need to ensure that they do not directly or "indirectly" (whatever that means) share any fees with any entity that has any nonlawyer ownership or any nonlawyer decision-making.  How a California lawyer is expected to investigate each referral source—without prying into detailed operations of the law firm, including whether some nonlawyer is exercising decision-making in some unobvious way—is as unclear as it is ominous to California practitioners.  There is also the issue of timing.  Because mass torts can take years to reach settlement, California lawyers will need to reassess and police referral firms on an ongoing basis, to ensure something has not changed in the referral firm that would qualify it as an ABS law firm.  Worse yet, even if a California lawyer shares fees with a non-ABS law firm, if that non-ABS law firm then shares some of those fees with an ABS, unbeknownst to the California lawyer—in full compliance with the laws and rules applicable to that law firm—the California lawyer is still punished because those fees were *indirectly* shared with an ABS.

44.    AB 931 does not contain a scienter element or any element of fault.  It is a strict liability law that applies regardless of any California lawyer's best intentions.  Considering law firms like Wisner Baum will receive referrals from hundreds of law firms over the course of a large mass tort—sometimes with multiple referrals on a single case—if AB 931 goes into effect, there is no way to safely do that in the future.  The result:  Clients, including California residents, who would have otherwise benefited from the larger settlements typically obtained by Wisner Baum aided by premium client management services from Eleos Law, will be left to fend for themselves and hire lawyers not constrained by AB 931, i.e., only non-California lawyers.

45.    AB 931 will effectively gut efforts of firms like Wisner Baum to collaborate with innovative ABS law firms—even if that ABS law firm develops services or technologies that would directly improve their client's experience, increase transparency, client engagement, and reduce costs and expenses charged to the client.

46.    AB 931 will also prevent injured plaintiffs from utilizing the contingency-

17

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

based services of a law firm like Eleos Law while also hiring California lawyers in the future. This is particularly problematic if the client is a Californian that wants to pursue their case in California state court. Because California attorneys are required to file a case in California Superior Court, any client that wants to proceed in California will, necessarily, be unable to hire a law firm like Eleos Law for case management or utilize any of their technologies.

**IV.    AB 931 Will Cause Concrete Harm to Plaintiffs**

47.    For Mr. Wisner, if AB 931 goes into effect he will suffer, *inter alia*, the following harm:

    a.  Mr. Wisner, as a General Partner at Eleos Law, will no longer be able to earn money based on contingent attorneys' fees for any case signed up after January 1, 2026, because any contingency fee earned by Eleos Law from a California law firm, such as Wisner Baum, after January 1, 2026 would constitute fee sharing with an ABS law firm in violation of AB 931;

    b.  Mr. Wisner, as the Managing Partner at Wisner Baum, will no longer be able to use Eleos Law to perform case management work for his mass tort plaintiffs signed up after January 1, 2026 because the small contingency fee (5% of attorney's fees) that is part of Eleos Law's pricing structure, would constitute fee sharing with an ABS law firm in violation of AB 931. This would necessarily force Mr. Wisner and Wisner Baum to expend considerable capital to rebuild in-house case management infrastructure (money previously spent to do this build out at Eleos Law would be, essentially, lost) or start a new California-only law firm for case management;

    c.  Mr. Wisner will no longer be able to accept referrals from ABS law firms after January 1, 2026, forcing those referrals and attendant valuable attorneys' fees to go to competing non-California mass tort lawyers;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

d.  Mr. Wisner will lose money in being local counsel for out-of-state ABS law firms that need competent California counsel to pursue claims in California courts after January 1, 2026, because local counsel fees are typically 5-10% of recovered contingent attorneys' fees;

e.  Mr. Wisner will need to expend considerable resources policing the ownership and control of any referring counsel or any co-counsel that retains Mr. Wisner as local counsel over the course of years of litigation, and spend money to purchase appropriate insurance to cover any potential penalties associated with inadvertent violations of AB 931;

f.  Mr. Wisner will be unable to include ABS law firms within a negotiated master settlement agreement—as Mr. Wisner has done in past settlements—reducing Mr. Wisner's ability to recover valuable contingent attorneys' fees as settlement counsel for plaintiffs that join a settlement program created by Mr. Wisner;

g.  Mr. Wisner will be unable to include other law firms within a negotiated master settlement agreement—as Mr. Wisner has done in past settlements—reducing Mr. Wisner's ability to recover attorneys' fees as settlement counsel for plaintiffs that join a settlement program created by Mr. Wisner unless he expends considerable resources policing the ownership and control of each plaintiff's counsel and their referral sources, which could span hundreds of different law firms; and

h.  Mr. Wisner will no longer be able to have his clients participate in most global settlement agreements, whether negotiated by Mr. Wisner or by other counsel, because global settlement programs necessarily include all plaintiffs in a particular mass tort—any one of which may have employed an ABS law firm as defined by AB 931—and there is typically some fee sharing that is not overseen by a court, reducing the attorneys' fees Mr. Wisner will be able to earn in those cases.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

48.    For Wisner Baum, if AB 931 goes into effect it will suffer, *inter alia*, the following harm:

    a.  Wisner Baum will no longer be able to co-counsel with Eleos Law to manage mass tort cases signed up after January 1, 2026, necessitating the re-hiring of hundreds of staff, investment of millions of dollars in developing technology that had previously been developed at Eleos Law over the last two years, and a destabilization of Wisner Baum's mass tort law practice.  Specifically, without Eleos Law, client communication would slow dramatically for Wisner Baum; Wisner Baum attorneys and staff would absorb data-heavy work that could be handled by new technology and Eleos Law; medical-record retrieval and fact-sheet processing would backlog; and litigation teams would lack timely information needed to prove causation, damages, select bellwether cases, and fully advocate for their clients.

    b.  Wisner Baum will no longer be able to accept referrals from ABS law firms after January 1, 2026, forcing those referrals and attendant valuable attorneys' fees to go to competing mass tort law firms that do not have a California attorney partner;

    c.  Wisner Baum will lose money in being local counsel for out-of-state ABS law firms that need competent and well-established California counsel to pursue claims in California courts after January 1, 2026, because local counsel fees are typically 5-10% of recovered contingent attorneys' fees;

    d.  Wisner Baum will need to expend considerable resources policing the ownership and control of any referring counsel or any counsel hiring Wisner Baum to be local counsel over the course of years of litigation, and spend money to purchase appropriate liability insurance to cover any potential penalties associated with inadvertent violations of AB 931;

    e.  Wisner Baum will be unable to include ABS law firms within a negotiated

master settlement agreement—as Wisner Baum has done in past settlements—reducing Wisner Baum's ability to recover valuable attorneys' fees as settlement counsel for plaintiffs that join a Wisner Baum settlement program;

f. Wisner Baum will be unable to include other law firms within a negotiated master settlement agreement—as Wisner Baum has done in past settlements—reducing Wisner Baum's ability to recover attorney's fees as settlement counsel for plaintiffs that join a Wisner Baum settlement program unless Wisner Baum expends considerable expense policing the ownership and control of each plaintiff's counsel and their referral sources; and

g. Wisner Baum will no longer be able to have their clients participate in most global settlement agreements, whether negotiated by Wisner Baum or by other counsel, because global settlement programs necessarily include all plaintiffs in a particular mass tort—any one of which may have employed an ABS law firms as defined by AB 931—and there is typically some fee sharing that is not overseen by a court, reducing the attorneys' fees Wisner Baum will be able to earn in those cases.

49.    If AB 931 goes into effect, Eleos Law faces a stark choice. If Eleos continues to receive contingent compensation – whether as direct contingency fees for case-management work, contingent referral fees, or contingent flat fees – for cases signed up after January 1, 2026, its two General Partners who are licensed in California, and any California law firms that share such fees with Eleos, will be exposed to discipline and statutory penalties under AB 931. That regime would likely force Eleos to lose two of its most valuable partners: its founder and its primary case-management specialist.

50.    Alternatively, Eleos would have to abandon its contingent fee model and move to purely non-contingent compensation which would reduce the valuation and

revenue of the company and make Eleos Law substantially less competitive.  The Contracts between Wisner Baum and Eleos Law depend on fee-sharing to align Wisner Baum's, Eleos Law's, and the client's interests. Absent fee-sharing, Eleos Law cannot maintain its hybrid model, invest in technology, or shoulder the operational risk needed to manage large dockets.  Moreover, a flat non-contingent fee would decouple Eleos Law from the aligned incentive for a favorable judgment for the client and impose additional risk on attorneys and clients seeking to do business with Eleos Law. Even if Eleos Law eliminated all California lawyers from the firm and thus, could accept contingent fees from other law firms without directly violation AB 931, that statute would still prevent Eleos Law from working with any law firm that has a California attorney, effectively shutting out a vast portion of the potential market. Although there are several ways this could go, Eleos Law is directly harmed should AB 931 go into effect.

51.     AB 931 also places Wisner Baum's four other equity partners in direct jeopardy.  Each equity partner is a California-licensed attorney whose livelihood and ownership interest depends on Wisner Baum's continued ability to participate in multi-jurisdictional mass-tort matters and to share fees with co-counsel and service providers such as Eleos Law.  If Wisner Baum enters into a prohibited fee-sharing arrangement with an out-of-state ABS law firm after January 1, 2026, each equity partner involved in or responsible for that arrangement faces exposure to statutory damages, attorneys' fees, injunctive relief, and professional discipline, including potential suspension or disbarment.  To avoid that personal risk, the equity partners would be forced either to prohibit Wisner Baum from entering into economically rational, client-serving fee-sharing arrangements with Eleos and other ABS law firms or to restructure the firm's ownership and practice model in ways that substantially diminish the value of their equity.  AB 931 thus places Wisner Baum's equity partners in an untenable position: they must choose between protecting their professional licenses and preserving the cross-jurisdictional practice structure that best serves their clients and sustains the

value of their ownership interests.

## CAUSES OF ACTION

**COUNT I:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Dormant Commerce Clause of the United States Constitution (Brought by All Plaintiffs Against All Defendants)**

52.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and all of the subsequent paragraphs.

53.    The Constitution's Dormant Commerce Clause, U.S. Const. art. I, §8, cl. 3, prevents states from taking discriminatory or unduly burdensome actions that interfere with interstate commerce. It reflects the Framers' "special concern[s]" to maintain "a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 335–36 (1989).  The purpose of the Dormant Commerce Clause is premised on the understanding that "our economic unit is the Nation," and so "'one state in its dealings with another may not place itself in a position of economic isolation.'" *H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 537–38 (1949) (quoting *Baldwin v. G.A.F. Seelig, Inc*., 294 U.S. 511, 527 (1935)).

54.    AB 931, if allowed to take effect on January 1, 2026, will greatly interfere with interstate commerce regarding nationwide mass tort litigation, to the significant economic detriment of Plaintiffs and similarly situated persons and entities.  The statute fails under multiple independent strands of Dormant Commerce Clause analysis:  it is facially discriminatory, it has a discriminatory purpose and effect, and it imposes heavy burdens on interstate practice that far outweigh any asserted local benefit.

55.    First, AB 931 is facially discriminatory. "The clearest example" of discrimination is "a law that overtly blocks the flow of interstate commerce at a State's borders." *See City of Philadelphia,* 437 U.S. at 624.  AB 931 prohibits any attorney "licensed or otherwise authorized to practice in this state" from sharing legal fees

"with an out-of-state alternative business structure." The law, thus, specifically targets interstate trade and isolates ABS law firms, which are only found in Arizona and Utah. AB 931 is therefore unconstitutional, as it *per se* violates the Dormant Commerce Clause. On its face, it bars commercial relationships between out-of-state ABS law firms, lawfully operating in those states, and California firms.

56. Second, AB 931 is invalid because it attempts to regulate commerce occurring wholly outside California's borders. State legislation is discriminatory in effect when it is applied "to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State[.]" *Healy*, 491 U.S. at 336. AB 931 violates this principle by controlling ABS law firms in places outside of California like Arizona, the District of Columbia, or Utah. It effectively prevents out-of-state ABS law firms from being involved with California attorneys and their firms, even if the commerce (i.e., practice of law) is taking place wholly in other states. It makes no difference to this analysis whether an ABS law firm's commerce has effects within California.

57. Third, AB 931 is invalid, because its enactment was "driven by ... economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (internal quotations and citations omitted). AB 931 is driven by economic protectionism. Its practical effect is to burden out-of-state competitors (i.e., ABS law firms in states like Arizona, Utah, Washington, D.C.) by, in effect, preventing them from doing business with California lawyers and their firms. However, those other states have chosen to permit ABS law firms and to allow them to partake in the practice of law. California, whether it intended to or not, has overstepped its power by enacting AB 931 and projecting a regulatory regime over the business of out-of-state ABS law firms.

58. Finally, even when "a statute has only indirect effects on interstate commerce and regulates evenhandedly," courts still examine "whether the State's

interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Healy*, 491 U.S. at 337 n.14. AB 931 is not rationally related to any legitimate state interest. The bill's author claimed its purpose was to "support Rule 5.4 of the California Rules of Professional Conduct[,]" ensure that "an attorney's legal judgment—and not profit—drive[s] legal decisions," and prevent "less protective attorney regulations" in other states from becoming "a loophole to take advantage of California consumers."[5] But the law does not address California consumers at all—it targets California lawyers. And, it does not tie the penalty to California lawyers to outcomes related to specific California consumers—for whom, as illustrated by the relationship between Wisner Baum and Eleos Law, it actually improves representation. Wisner Baum and Eleos Law contracted with each other precisely to use technological innovation to expand access to justice: reducing litigation costs (thereby increasing client recoveries), streamlining case management, and freeing litigation attorneys to focus on substantive advocacy. So, in practice, AB 931 disrupts all this and the statute does the opposite.

59.      Moreover, the idea that an ABS law firm's motivations would be driven solely by corporate greed does not hold water. All law firms, whether they have nonlawyer ownership or not, seek to make profit; neither plaintiff's nor defense law firms are non-profit organizations. The concerns about corporate greed apply just as much to ABS law firms as it does to traditional law firms. The difference, however, is that unlike a traditional law firm, ABS law firms undergo considerably more scrutiny. *See* supra ¶ 29. The notion that greed will drive decision-making in an ABS law firm more than in a traditional law firm is a complete fiction. The truth is simple – *all* lawyers, including California lawyers, have fiduciary duties to their clients, and there is no reason to believe that a California lawyer working with or within an ABS law firm, as opposed to a traditional law firm, will violate those obligations. ABS law

---

[5] Senate Judiciary Committee Analysis, at 14 (last accessed Nov. 17, 2025), https://sjud.senate.ca.gov/system/files/2025-06/ab-931-kalra-sjud-analysis.pdf.

firms and their attorneys are required to fulfill their fiduciary duties to clients and undergo significant scrutiny to ensure compliance with the rules governing ABS law firms, and Rules of Professional Conduct, Rule 42.[6]  Thus, AB 931 cannot be rationally related to any purported interest in protecting California consumers from non-fiduciary actors, because barring ABS law firms does not promote any greater protection for consumers than is already provided in traditional law firms.

60.    Even if AB 931 served some legitimate interest by barring ABS law firms from doing business in California, the local benefit would clearly be exceeded by the burden on interstate commerce.  Blocking California lawyers and firms from fully utilizing ABS law firms in their practice does not benefit California lawyers nor consumers.  As explained above, it holds them back and hurts their business, which in the mass tort world, consistently spans across the nation.  Moreover, it may also require California attorneys to obtain and maintain dual licensure solely to not violate AB 931, which imposes a substantial compliance cost unique to California practitioners.

61.    Thus, state legislation, such as AB 931, cannot withstand constitutional scrutiny as it significantly restricts interstate commerce and will cause severe financial harm to California attorneys, their firms, and their clients in the mass tort space, instead of providing those same persons and entities with any long-term benefit.  AB 931 is precisely the type of protectionist measure that the Dormant Commerce Clause condemns.

62.    As direct and proximate results of Defendant's deprivation of Plaintiffs' rights under the Dormant Commerce Clause, Plaintiffs will suffer harm including monetary losses and deprivation of rights that cannot be remedied at law if AB 931 is allowed to be enforced starting on January 1, 2026.  Accordingly, Plaintiffs are entitled to a preliminary and permanent injunction restraining Defendants from violating

---

[6] Rule 42 states that the professional conduct of members is governed by the Model Rules of Professional Conduct of the American Bar Association, as amended by the Arizona Supreme Court.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs' rights.

63.    Because AB 931 attempts to regulate ABS law firms in other states, which has a major negative impact in those other states as well as here in California, in violation of the Dormant Commerce Clause, this Court should use its powers pursuant to 28 U.S.C. section 2201 to declare AB 931 null and void, and with no force or effect.

64.    Because AB 931's prohibition against California lawyers and their firms doing business with ABS law firms in other states violates the Dormant Commerce Clause, and could cause significant, unrecoverable economic and other forms of damages to Plaintiffs should it be allowed to become effective on January 1, 2026, this Court should issue a temporary restraining order, preliminary injunction, and permanent injunction, enjoining the enforcement of AB 931, for violating the Dormant Commerce Clause.

**COUNT II: Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of Privileges and Immunities Clause of the United States Constitution (Brought by Mr. Wisner Against All Defendants)**

65.    Mr. Wisner realleges and incorporates herein by reference each of the preceding paragraphs, and all subsequent paragraphs of this Complaint.

66.    Article IV, Section 2 of the U.S. Constitution, also known as the Privileges and Immunities Clause, provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

67.    42 U.S.C. section 1983 also provides, in pertinent part, that "[e]very person[7] who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity,

---

[7] Defendants are "persons" for purposes of Section 1983.

27

injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable[.]"

68.    Specifically, the Clause prohibits a state from discriminating against citizens of other states in the pursuit of fundamental economic activities, the right to "pursu[e] a common calling is one of the most fundamental of those privileges protected by the Clause." *United Bldg. & Const. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 219 (1984).

69.    Similarly, the California Constitution provides, in pertinent part, that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1. "[T]here is a 'fundamental right' to pursue a lawful occupation. . . . [including the] right to practice law[.]" *Townsend v. Cnty. of Los Angeles*, 49 Cal. App. 3d 263, 267 (Ct. App. 1975).

70.    According to the U.S. Supreme Court, "the practice of law falls within the ambit of the Privileges and Immunities Clause." *Supreme Ct. of New Hampshire v. Piper*, 470 U.S. 274, 281 (1985). It is a "fundamental right" because lawyers play an important role in the national economy, allow plaintiffs to bring unpopular federal claims, and help maintain the well-being of the Union. *Id.* The Court further emphasized that the Clause protects interstate legal practice in particular to ensure that plaintiffs have meaningful access to justice, noting that "[i]n some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights." *Id.*

71.    AB 931 deprives California lawyers, including Mr. Wisner, of the constitutional privilege to engage in lawful interstate practice by substantially burdening their ability to collaborate with out-of-state law firms that have chosen to be structured as an ABS law firm in jurisdictions where they are lawful. In modern mass-tort litigation, interstate collaboration is not optional. Rather, it is inherent to this

specialty practice of law.  Cases are routinely centralized in federal MDLs or consolidated in a single venue, regardless of which state the plaintiff filed in.  As a result, complex plaintiffs' litigation firms must work across jurisdictions with co-counsel, local counsel, and court-appointed leadership teams.  The Supreme Court has recognized that the Privileges and Immunities Clause protect such interstate legal practice, because it serves the functioning of the Union, promotes access to justice, and ensures plaintiffs can obtain qualified representation. *Id.*

72.    Although attorneys must comply with the ethical rules of the states in which they practice, AB 931 goes far beyond that principle.  AB 931 categorically prohibits Mr. Wisner from sharing contingent fees with an ABS law firm, even though Arizona expressly authorizes and regulates such entities.  Thus, AB 931 bars Mr. Wisner from working with a lawful Arizona law firm (e.g., Eleos Law) solely because California disapproves of Arizona's regulatory choices.  By blocking those partnerships, AB 931 prevents Mr. Wisner from accessing out-of-state resources that are essential to his ability to manage nationwide mass-tort dockets.  In effect, the statute attempts to impose California's ethics rules extraterritorially onto Arizona and to control lawful legal practice occurring wholly outside California's borders.  And the U.S. Supreme Court has ruled that restrictions on interstate attorney mobility and professional collaboration implicate the Privileges and Immunities Clause.  *Id.*

73.    With respect to AB 931, there is also no "substantial reason for the difference in treatment," nor does AB 931's discrimination against ABS law firms "bear[] a substantial relationship to the State's objective."  *See Piper*, 470 U.S. at 284.  "In deciding whether the discrimination bears a close or substantial relationship to the State's objective, the Court has considered the availability of less restrictive means." *Id.*

74.    Defendants cannot present a substantial reason to discriminate against ABS law firms.  ABS law firms present no distinctive problem that cannot be adequately addressed using existing ethics rules, attorney disciplinary mechanisms,

conflict-of-interest rules, and malpractice enforcement. Multiple U.S. jurisdictions permit ABS structures with public protection safeguards. In reality, there is no difference between a California law firm sharing fees with an Arizona law firm versus sharing fees with an Arizona ABS law firm. Every ABS law firm is required to employ at least one Arizona barred attorney and each ABS law firm provides legal services in strict compliance with the Rules of the Supreme Court of Arizona. *See* A.R.S. Sup.Ct.Rules, Rule 31.1(c). Those attorneys employed by an ABS law firm are subject to discipline in California just like any Arizona attorney working with California counsel would be. Thus, AB 931 discriminates simply based on ownership-structure and location, despite Arizona's sufficient regulatory safeguards.

75.    As a direct and proximate result of Defendant's deprivation of Mr. Wisner's rights, privileges and immunities, Mr. Wisner faces immediate and irreparable harm including monetary losses and deprivation of rights, privileges, and immunities that cannot be remedied at law if AB 931 is allowed to be enforced starting on January 1, 2026. His ongoing work in nationwide mass-tort litigations, where he represents thousands of clients whose cases depend on the case-management law firm Eleos Law, will be disrupted the moment AB 931 takes effect. AB 931 would bar Mr. Wisner from continuing his established fee-sharing collaboration with Eleos Law and any other ABS law firm in the future, which, in turn, would impair his ability to manage and prosecute large, multi-jurisdictional dockets effectively, meet deadlines, and maintain the level of communication and accuracy achieved through Eleos Law's approach towards case management. These injuries cannot be remedied by monetary damages. Accordingly, Mr. Wisner is entitled to a preliminary and permanent injunction restraining Defendants from violating Mr. Wisner's rights.

76.    Because AB 931 substantially burdens Mr. Wisner's exercise of his fundamental right to practice law through modern multistate collaboration, in violation of the Privileges and Immunities Clause and the California Constitution, this Court should use its powers pursuant to 28 U.S.C. section 2201 to declare AB 931 null and

void, and with no force or effect.

77.    Because AB 931's prohibition against California lawyers and their firms doing business with ABSs in other states violates the Privileges and Immunities Clause, and could cause significant, unrecoverable economic and other forms of damages to Mr. Wisner should it be allowed to become effective on January 1, 2026, this Court should issue a temporary restraining order, preliminary injunction, and permanent injunction, enjoining the enforcement of AB 931, for violating the Privileges and Immunities Clause and the California Constitution.

**COUNT III:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Contract Clause of the United States Constitution (Brought by All Plaintiffs Against All Defendants)**

78.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

79.    AB 931 violates Article I, Section 10 of the U.S. Constitution, which prohibits states from "pass[ing] any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1.

80.    Similarly, the California Constitution provides that "[a] bill of attainder, *ex post facto* law, or law impairing the obligation of contracts may not be passed." Cal. Const. art. I, § 9.  "The California Supreme Court uses the federal Contract Clause analysis for determining whether a statute violates the parallel provision of the California Constitution."  *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1097 (9th Cir. 2003).

81.    The Contract Clause limits "the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power."  *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978). This is because "[c]ontracts enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them." *Id.* at 245.  This limitation is especially important here, where the contract between

Wisner Baum and Eleos Law governs long-term, high-volume, multi-year mass-tort litigation involving thousands of clients whose cases depend on stable and predictable contractual arrangements for case management, cost-sharing, and attorney collaboration.  That contract was entered into based on the expectation that Wisner Baum would utilize Eleos Law for all case management for mass torts moving forward—subject, of course, to an individual plaintiff's consent.

82.     While AB 931 contains a provision limiting it to contracts entered into on or after January 1, 2026, as explained above, it is highly likely that it will still have a retroactive impact as many existing contracts associated with ongoing litigation will need to be amended or adjusted sometime between when AB 931 becomes effective next year and when it sunsets at the start of 2030.  Thus, the statute would retroactively render lawful contractual arrangements—formed in reliance on the then-existing legal regime—unlawful, thereby breaching Plaintiffs' reasonable contractual expectations.

83.     AB 931 operates as a substantial impairment of Plaintiffs' contractual relationships with each other.  Plaintiffs entered into contracts for case management of multiple mass tort litigations that are ongoing, each of which have thousands of clients These agreements included fee sharing provisions that that align incentives, allow Eleos Law to invest in technological infrastructure, and ensure unified commitment to optimal client outcomes.  Eleos Law has hired engineering, operations, and case-management staff in reliance on these agreements.  Wisner Baum, in turn, structured its staffing, financial obligations, and litigation strategy around Eleos Law's continued case management services.  Such reliance was vital to the contracting parties. Moreover, there are still several thousand outstanding contracts that are being signed by baby food clients every day—if any come in after January 1, 2026, they will subject Wisner Baum or its attorneys to potential discipline and penalties under AB 931.

84.     Although AB 931 is intended to protect California attorneys and their clients, the reality is that they will be harmed if AB 931 bars California attorneys from contracting with out-of-state ABSs. The statute prohibits California lawyers from

working as co-counsel with law firms structured as ABS law firms in other states.  In particular, preventing Wisner Baum from contracting with Eleos Law will delay case development, increase litigation costs, and reduce the capacity of Wisner Baum to represent thousands of injured plaintiffs efficiently.  In the Baby Food litigation alone, Eleos Law is contracted to manage more than 8,450 clients with imminent trial deadlines in January, and client contracts continue to come in every day.  The very persons AB 931 seeks to protect are, in reality, harmed.

85.    AB 931 does not advance a significant or legitimate public purpose. Arizona and other ABS jurisdictions impose rigorous regulatory safeguards, and California already possesses less restrictive means, such as State Bar discipline, and malpractice liability, that adequately protect consumers.  Instead, it engages in ill-conceived economic protectionism that provides the opposite result of what it intends. It is not drawn appropriately or reasonably to advance a legitimate public purpose.

86.    AB 931's adjustment of the rights and responsibilities of contracting parties such as Plaintiffs is not based upon reasonable conditions nor is it tailored to the public purpose justifying the legislation's adoption.  It is unreasonable to prevent California attorneys from outsourcing the significant workload of case management in an effort to save time and money.  Plaintiffs have contractually agreed to this arrangement and AB 931 arbitrarily interferes with that arrangement.

87.    As direct and proximate results of Defendant's deprivation of Plaintiffs' rights under the Contract Clause and the California Constitution, Plaintiffs will suffer harm including monetary losses and deprivation of rights that cannot be remedied at law if AB 931 is allowed to be enforced starting on January 1, 2026.  Accordingly, Plaintiffs are entitled to a preliminary and permanent injunction restraining Defendants from violating Plaintiffs' rights.

88.    Because AB 931 violates Plaintiffs' fundamental right to contract, in violation of the Contract Clause and the California Constitution, this Court should use its powers pursuant to 28 U.S.C. section 2201 to declare AB 931 null and void, and

with no force or effect.

89.     Because AB 931's prohibition against California lawyers and their firms doing business with ABSs in other states violates the Contract Clause and the California Constitution, and could cause significant, unrecoverable economic and other forms of damages to Plaintiffs should it be allowed to become effective on January 1, 2026, this Court should issue a temporary restraining order, preliminary injunction, and permanent injunction, enjoining the enforcement of AB 931, for violating the Contract Clause and the California Constitution.

**COUNT IV:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the First Amendment (Brought by All Plaintiffs Against All Defendants)**

90.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

91.     The First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

92.     Similarly, the California Constitution provides, in pertinent part, that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. I, § 2.

93.     Plaintiffs' rights to practice law—including communicating with clients, selecting and contracting with cocounsel, creating strategy, and collaborating across state lines in a coordinated effort—constitute protected freedom of expression and association under the First Amendment.  *See NAACP v. Button*, 371 U.S. 415, 428 (1963); *see Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1058 (1991).  A state law may not restrict these activities unless the law is narrowly tailored to serve a compelling state interest.  *NAACP*, 371 U.S. at 439.  "For a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Id*.

94.     AB 931 will have a chilling effect on Plaintiffs' protected First Amendment rights to expression and association.  Plaintiffs cannot effectively

represent or communicate with their clients in mass-tort cases without the existing contracts between Eleos Law and Wisner Baum, nor can they dictate the terms of their work with co-counsel in different jurisdictions. AB 931 prohibits California law firms from entering fee-sharing contractual arrangements with out-of-state legal service entities, restricting whom Plaintiffs can associate with in pursuing legal justice for their clients and how they convey legal advice, case-management communications, and litigation strategy. These are forms of protected expressive and associational activity.

95.    In addition, AB 931 restricts Plaintiffs' professional judgment and expressive choices by effectively dictating with which lawful out-of-state business partners and legal entities they may associate. This, in turn, restricts how they may express themselves professionally. Thus, this constraint on professional judgment violates the First Amendment, because it prevents both their ability to communicate with, or through, their chosen co-counsel, and attorneys' ability to advocate for modern, alternative business models that increase access to legal services. *See Gentile*, 501 U.S. 1030. These restrictions directly impinge on California attorneys' ability to choose how they advocate for their own clients, the mode and content of their legal advice and communications, and how they participate in coordinated national litigation.

96.    AB 931 cannot withstand First Amendment scrutiny. The bill author expressed that AB 931 was enacted "to uphold the integrity of the legal profession . . . , aligned statutory law with California Rule of Professional Conduct 5.4[, to] ensure[] that California attorneys remain accountable to their clients."[8] First, this is not a compelling government interest, nor a legitimate one, because "a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *NAACP*, 371 U.S. at 439. Second, even assuming this purpose is compelling, AB 931 is not narrowly tailored to achieve it. Existing ethics rules governing conflicts of

---

[8] Senate Judiciary Committee Analysis, at 14 (last accessed Nov. 17, 2025), https://sjud.senate.ca.gov/system/files/2025-06/ab-931-kalra-sjud-analysis.pdf.

interest, attorney discipline, and malpractice already address the concerns given in support of the statute. Moreover, as explained above, Eleos Law is a licensed law practice in Arizona whose supervising attorneys owe fiduciary duties to their clients. AB 931 would not serve its stated purpose; it would undermine it.

97. As direct and proximate results of Defendant's deprivation of Plaintiffs' First Amendment and California Constitutional rights, Plaintiffs will suffer harm including monetary losses and deprivation of rights that cannot be remedied at law if AB 931 is allowed to be enforced starting on January 1, 2026. AB 931 will immediately disrupt Plaintiffs' ability to communicate with clients, manage their cases, and work with cocounsel, and these harms cannot be adequately remedied by monetary damages. Interference with protected speech and association constitutes irreparable injury as a matter of law, and injunctive relief is appropriate. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, Plaintiffs are entitled to a preliminary and permanent injunction restraining Defendants from violating Plaintiffs' rights.

98. Because AB 931 violates Plaintiffs' First Amendment and California Constitutional rights, this Court should use its powers pursuant to 28 U.S.C. section 2201 to declare AB 931 null and void, and with no force or effect.

99. Because AB 931's prohibition against California lawyers and their firms doing business with ABSs in other states violates the First Amendment and the California Constitution, and could cause significant, unrecoverable economic and other forms of damages to Plaintiffs should it be allowed to become effective on January 1, 2026, this Court should issue a temporary restraining order, preliminary injunction, and permanent injunction, enjoining the enforcement of AB 931, for violating the First Amendment and the California Constitution.

**COUNT V: Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Fifth and Fourteenth Amendments (Brought by All Plaintiffs Against All Defendants)**

100. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**A. Takings Clause**

101.    The Takings Clause of the Fifth Amendment, applied to states through the Fourteenth Amendment, provides that "[n]o person shall . . . .be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

102.    Similarly, the California Constitution provides that "[p]rivate property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Cal. Const. art. I, § 19(a).  "[T]he California Supreme Court noted that the California constitution protects a 'somewhat broader range of property values' than the corresponding federal provision, but that it otherwise generally construes the clauses congruently." *San Remo Hotel, L.P. v. San Francisco City & Cnty.*, 364 F.3d 1088, 1093 (9th Cir. 2004).

103.    Contracts constitute property within the meaning of a "taking" under the Constitution.  *See Lynch v. United States*, 292 U.S. 571, 579 (1934); *see Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1003 (1984).

104.    Plaintiffs possess valid contractual rights in existing agreements governing case-management and fee sharing between Wisner Baum and Eleos Law. These contracts concern thousands of clients in multiple multi-jurisdiction mass tort litigations and were formed in reliance on the legal framework in existence before AB 931.

105.    AB 931 substantially impairs and destroys Plaintiffs' vested property rights in their contracts by prohibiting ongoing performance of fee-sharing terms with out-of-state ABS law firms. This renders key terms unlawful and constitutes a regulatory taking, because it destroys the economic value of the agreements without prior and just compensation to Plaintiffs and without due process.

106.    A compelling government interest does not justify AB 931.  As explained above, AB 931 arbitrarily restricts the economic liberty of Wisner Baum to contract

with Eleos Law, a licensed Arizona law practice whose supervising attorneys owe fiduciary duties identical to those owed by any Arizona-based law firm. Therefore, AB 931 is not narrowly tailored to protecting consumers or the practice of law in California, and without a compelling interest, AB 931 violates the Takings Clause.

107.   Accordingly, by preventing Plaintiffs from entering into fee sharing agreements with each other, AB 931 is taking Plaintiffs' property without any valid public purpose. It potentially undermines, and possibly wholly prohibits, current and future agreements between Plaintiffs that would be perfectly valid if the agreements were between California attorneys/firms and Arizona attorneys/firms.

### B. Substantive Due Process (Economic Liberty)

108.   The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. California recognizes the same protections under Article I, § 7 of its Constitution.

109.   The right to hold a specific occupation, including the practice of law, "and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *See Greene v. McElroy*, 360 U.S. 474, 492 (1959); *see also Townsend v. Cnty. of Los Angeles*, 49 Cal. App. 3d 263, 267 (Ct. App. 1975).

110.   AB 931 unreasonably interferes with Plaintiffs' economic liberty and their right to practice law by prohibiting California attorneys from collaborating with, and entering fee-sharing arrangements with, lawful out-of-state ABS law firms.  As stated above, this includes a lawyer's ability to have an inherently interstate practice and to associate with cocounsel of their choice.  AB 931 bears no rational relationship to its stated interests (consumer protection or the integrity of the legal profession) and instead undermines those interests.

111.   AB 931's narrow exceptions (limited to court-approved common benefit funds and specific-dollar-amount contracts with no contingency element) highlight that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

AB 931 is not narrowly tailored to achieve any compelling regulatory objective. As explained herein, the current carve-outs do not reflect the operational realities of mass tort practice, will lead to significant detriment to the advancement of mass tort practice, do not permit Plaintiffs to continue their existing contractual cocounsel relationships, and harm Plaintiffs' ability to perform professional obligations to their clients.

### C. Irreparable Harm and Relief

112.    As direct and proximate results of Defendant's deprivation of Plaintiffs' Fifth and Fourteenth Amendment and California Constitutional rights, Plaintiffs will suffer harm including monetary losses and deprivation of rights that cannot be remedied at law if AB 931 is allowed to be enforced starting on January 1, 2026. Accordingly, Plaintiffs are entitled to a preliminary and permanent injunction restraining Defendants from violating Plaintiffs' rights.

113.    Because AB 931 violates Plaintiffs' Fifth and Fourteenth Amendment and California Constitutional rights, this Court should use its powers pursuant to 28 U.S.C. section 2201 to declare AB 931 null and void, and with no force or effect.

114.    Because AB 931's prohibition against California lawyers and their firms doing business with ABSs in other states violates the Fifth and Fourteenth Amendment and the California Constitution, and could cause significant, unrecoverable economic and other forms of damages to Plaintiffs should it be allowed to become effective on January 1, 2026, this Court should issue a temporary restraining order, preliminary injunction, and permanent injunction, enjoining the enforcement of AB 931, for violating the Fifth and Fourteenth Amendment and the California Constitution.

**COUNT VI:  Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Full Faith and Credit Clause of the U.S. Constitution (Brought by All Plaintiffs Against All Defendants)**

115.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

116.    Article IV, Section 1 of the U.S. Constitution provides that "Full Faith

and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1.

117. Pursuant to that Clause, Congress has prescribed: "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.

118. "The animating purpose of the full faith and credit command, as this Court explained in *Milwaukee County v. M.E. White Co*., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935), 'was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.'" *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998).

119. The Full Faith and Credit Clause prohibits a state from refusing to respect or give effect to the valid public acts of another state merely because it disagrees with that state's regulatory policy. *See id.* at 232-234; *see also Hughes v. Fetter*, 341 U.S. 609, 611–13 (1951).

120. Arizona and Utah have enacted laws expressly authorizing ABS law firms to operate as licensed legal practices. Eleos Law is a law firm, despite non-lawyer ownership stakes, pursuant to the Arizona Supreme Court's regulatory authority and is subject to attorney-discipline, fiduciary obligations, and professional-responsibility rules identical to those governing traditional Arizona law firms.

121. AB 931 does not dispute or deny Eleos Law's legal status as an Arizona-licensed ABS. Instead, by stripping the operative effect of Arizona's laws in California, AB 931 refuses to allow California attorneys to treat Eleos Law as what Arizona law declares it to be: a legal law firm. By categorically prohibiting California

attorneys from sharing fees with an Arizona-licensed ABS law practice solely because of its Arizona-authorized structure, California denies Arizona's public act the "force and effect" required by the Full Faith and Credit Clause. *See Hughes*, 341 U.S. 611–13; *Baker*, 522 U.S. 233.

122.   A state may not "substitute the statutes of other states for its own statutes" based on policy disagreement. *Baker*, 522 U.S. at 233. AB 931 (quoting *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501 (1939)). But AB 931 does exactly this—where California disagrees with Arizona's regulatory choice to permit ABS law practices, and therefore refuses to give effect to Arizona's valid licensing decision. The Full Faith and Credit Clause does not permit California to withhold legal effect from a sister state's legitimate regulatory act.

123.   Arizona authorizes Eleos Law to employ attorneys, provide legal services, share fees, and partner with out-of-state counsel as a fully licensed law practice. AB 931 directly conflicts with this authorization, making conduct permitted by Arizona unlawful and unenforceable in California. AB 931 therefore violates the Full Faith and Credit Clause.

124.   As a direct and proximate result of Defendants' violation of the Full Faith and Credit Clause, Plaintiffs face immediate and irreparable harm, including the disruption of ongoing litigation involving thousands of clients, destruction of existing contractual relationships, and severe operational and economic injuries that cannot be remedied by monetary damages. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief restraining Defendants from enforcing AB 931.

125.   Because AB 931 violates the Full Faith and Credit Clause and the California Constitution, this Court should exercise its authority under 28 U.S.C. § 2201 to declare AB 931 null and void, without force or effect.

126.   Because AB 931's prohibition against California lawyers and their firms doing business with ABSs in other states violates the Full Faith and Credit Clause and threatens immediate, irreparable, and unrecoverable harm if allowed to take effect on

January 1, 2026, this Court should issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining enforcement of AB 931.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court enter a judgment as follows:

     i.  For a declaration that AB 931 violates provisions of the United States Constitution and the California Constitution;

    ii.  For a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and all persons in active concert with them from enforcing or threatening to enforce AB 931 against Plaintiffs;

  iii.  For reasonable attorneys' fees (including expert fees) incurred in this matter pursuant to 42 U.S.C. section 1988 and other pertinent law; and

  iv.  Costs of suit, pre and post-judgment interest as permitted by law; and any such other relief as the Court may deem just and proper.

[*Signatures on following page.*]

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Respectfully submitted,

Dated:  November 25, 2025        **R. BRENT WISNER**

By:  /s/ R. Brent Wisner
R. Brent Wisner, Esq.
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233

*Attorney Pro Se*


**WISNER BAUM LLP**

By:  /s/ Timothy A. Loranger
Timothy A. Loranger, Esq. (SBN: 225422)
tloranger@wisnerbaum.com
Behram V. Parekh, Esq. (SBN: 180361)
bparekh@wisnerbaum.com
Crawford Appleby, Esq. (SBN: 292010)
cappleby@wisnerbaum.com
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233

*Attorneys for Plaintiff Wisner Baum LLP*


**ELEOS LAW LLP**

By:  /s/ Helen E. Tokar
Helen E. Tokar, Esq. (SBN: 283649)
htokar@eleoslaw.com
2 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: (623) 253-9531

*Attorney for Plaintiff Eleos Law LLP*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF