R. Brent Wisner (SBN: 276023)
RBWisner@wisnerbaum.com
**WISNER BAUM, LLP**
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Attorney Pro Se*

*Additional attorneys' contact information
on signature page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. BRENT WISNER, an individual; WISNER BAUM, LLP, a California limited liability partnership; and ELEOS LAW LLP, an Arizona limited liability partnership; | **CASE NO. 2:25-cv-11358** |
|                Plaintiffs, | **PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES** |
|      v. | |
| ROB BONTA, in his official capacity as Attorney General of California; LAURA ENDERTON-SPEED, in her official capacity as Executive Director of The State Bar of California; and GEORGE CARDONA, in his official capacity as Chief Trial Counsel for The State Bar of California, | JUDGE: THE HONORABLE DOLLY M. GEE |
|                Defendants. | |

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs Wisner Baum, LLP, Eleos Law LLP, and Mr. R. Brent Wisner (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 65, hereby move *ex parte* for (1) a temporary restraining order ("TRO") and (2) an Order to Show Cause why a preliminary injunction should not issue based on Plaintiffs' claims for violations of the Dormant Commerce Clause, the Privileges & Immunities Clause, the Contract Clause, the Full Faith & Credit Clause, and the First, Fifth, and Fourteenth Amendments. *See* Dkts. 1 and 19. Plaintiffs seek an order temporarily restraining Defendants Rob Bonta, in his official capacity as Attorney General of California, and Lauren Enderton-Speed and George Cardena, in their official capacities as State Bar officials, and their officers, agents, servants, employees, and any other persons who are in active concert or participation with them, from enforcing or threatening to enforce California's Assembly Bill 931 ("AB 931") and an Order directing Defendants to appear and show cause why a preliminary injunction should not issue enjoining enforcement of AB 931 during the pendency of this action. Plaintiffs are likely to succeed on the merits of their claims, they are likely to suffer irreparable harm absent this interim relief, the balance of equities tip in Plaintiffs' favor, and issuance of the temporary restraining order is in the public interest. *See X Corp. v. Bonta*, 116 F.4th 888, 897 (9th Cir. 2024).

First, Plaintiffs are likely to succeed on the merits of their claims because AB 931 violates multiple constitutional provisions, including the First Amendment. AB 931 will infringe on Plaintiffs' freedoms of expression and association, and rights to due process of law, to pursue a lawful occupation including the practice of law, and to contract. Further, AB 931 substantially burdens interstate commerce and violates the Full Faith and Credit Clause by disregarding the lawful regulatory acts of other sovereign states. *See generally*, Dkt. 1. Under the Ninth Circuit's framework for assessing temporary restraining orders in the First Amendment context, Plaintiffs need

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

only establish "a colorable claim that [their] First Amendment rights . . . are threatened with infringement." *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Plaintiffs have done that, and therefore "the burden shifts to the government to justify" the laws—a burden the government cannot meet here. *Id*. Because AB 931 restricts Plaintiffs' freedoms of expression and association, protected under the First Amendment, it is presumptively unconstitutional and triggers strict scrutiny. *Nat'l Inst. of Family & Life Advocates v. Becerra (NIFLA)*, 585 U.S. 755, 766 (2018). No exceptions to strict scrutiny apply. *See X Corp.*, 116 F.4th at 901-02. Here, Defendants will be unable to meet their burden to show that the laws survive any form of scrutiny, let alone strict scrutiny, because there is not a compelling or substantial state interest, and the laws are not narrowly tailored.

Second, Plaintiffs will suffer irreparable harm absent a temporary restraint, as Plaintiffs will either be forced to abandon their contracts and spend immense amounts of money to restructure their law firms, a process that requires abandoning their chosen methods of professional expression and severing co-counsel associations, or they will be exposed to sanctions and disciplinary action by Defendants. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The immediate threat of enforcement imposes a burden now, as Plaintiffs "already are expending time and funds preparing for enforcement" of AB 931 through litigation and consideration of costly restructuring methods. *See NetChoice, LLC v. Bonta*, 692 F. Supp. 3d 924, 964 (N.D. Cal. 2023), *aff'd in relevant part*, 113 F.4th 1101 (9th Cir. 2024).

Third and fourth, the balance of the equities and the public interest requires that a temporary restraining order issue. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the third and fourth factors "merge" when the "[g]overnment is the opposing party"). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).

2

And the "fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiffs'] favor." *Am. Beverage Ass'n v. City of San Francisco*, 916 F.3d 749, 756, 758 (9th Cir. 2019).

Thus, a temporary restraining order is appropriate, and good cause exists to extend the effect of that order through the hearing on a preliminary injunction. This motion is based on this Ex Parte Motion, the concurrently filed Declaration of R. Brent Wisner, the Declaration of Timothy A. Loranger, the Complaint for Declaratory and Injunctive Relief (Dkt. 1), the accompanying Memorandum of Points and Authorities, the accompanying proposed Temporary Restraining Order, the accompanying supporting declarations, as well as any other oral or written evidence or argument that the Court may consider.

## COMPLIANCE WITH LOCAL RULE 7-19

Compliance with the requirements of Local Rule 7-19.1 are set forth in the *Declaration of Timothy A. Loranger*, submitted with this application. *See generally*, Ex. A, *Declaration of Timothy A. Loranger.* Defendants each advised that they will oppose this application and have requested that the Court grant additional time to file responsive papers. Counsel for Rob Bonta requests until at least December 17, 2025. *Id.*

Pursuant to Local Rule 7-19 the contact information for Defendants' counsel is:

Jennifer Sperling
Jennifer.Sperling@calbar.ca.gov
(213) 765-1000
Rebecca Leeds
Rebecca.Leeds@calbar.ca.gov
(213) 765-1000
**Office of General Counsel, The State Bar of California**
845 South Figueroa St., Los Angeles, CA 90017

---

3

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

*Attorneys for Defendants, LAURA ENDERTON-SPEED, in her official capacity as Executive Director of The State Bar of California; and GEORGE CARDONA, in his official capacity as Chief Trial Counsel for The State Bar of California*

Robert L. Meyerhoff
Robert.Meyerhoff@doj.ca.gov
(213) 269-6177
Samuel E. Sokolsky
Samuel.Sokolsky@doj.ca.gov
(415) 510-3584
**California Dept. of Justice**
300 S. Spring St., Ste. 1702
Los Angeles, CA 90013
*Attorneys for Defendant, Rob Bonta*

Respectfully submitted,

Dated:  December 12, 2025          **WISNER BAUM LLP**

By:  /s/ R. Brent Wisner
R. Brent Wisner, Esq. (SBN: 276023)
RBWisner@wisnerbaum.com
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233

*Attorney Pro Se*

**WISNER BAUM LLP**

By:  /s/ Timothy A. Loranger
Timothy A. Loranger, Esq. (SBN: 225422)
tloranger@wisnerbaum.com
Behram V. Parekh, Esq. (SBN: 180361)
bparekh@wisnerbaum.com
Crawford Appleby, Esq. (SBN: 292010)
cappleby@wisnerbaum.com

4

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233

*Attorneys for Plaintiff Wisner Baum LLP*


**ELEOS LAW LLP**

By: /s/ Helen E. Tokar
Helen E. Tokar, Esq. (SBN: 283649)
HTokar@eleoslaw.com
2 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: (623) 253-9531

*Attorney for Plaintiff Eleos Law LLP*

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

# **Table of Contents**

TABLE OF AUTHORITIES .................................................................................7

MEMORANDUM OF POINTS AND AUTHORITIES ..............................10

INTRODUCTION .......................................................................................10

BACKGROUND .........................................................................................11

LEGAL STANDARD ..................................................................................13

ARGUMENT ..............................................................................................14

   I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. .................15

      A.  Dormant Commerce Clause ...........................................15

      B.  Privileges & Immunities Clause....................................18

      C.  Contract Clause ...............................................................19

      D.  First Amendment .............................................................20

      E.  Fifth and Fourteenth Amendment (Takings Clause and Substantive Due
        Process)…………………………………………………………...21

      F.  Full Faith & Credit Clause .............................................23

   II.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT THE
      COURT'S INTERVENTION. .................................................24

   III. THE PUBLIC'S INTEREST AND BALANCE OF EQUITIES WEIGH IN
      FAVOR OF PLAINTIFFS. .................................................25

   IV. GOOD CAUSE EXISTS TO EXTEND THE TEMPORARY RESTRAINING
      ORDER BEYOND THE STANDARD 14 DAYS. ........ **Error! Bookmark not
      defined.**

   V.  ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION...............26

CONCLUSION ...........................................................................................26

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234 (1978)...............................19, 20

*Am. Beverage Ass'n v. City of San Francisco*, 916 F.3d 749 (9th Cir. 2019)................3

*Arc of California v. Douglas*, 757 F.3d 975 (9th Cir. 2014) ........................................13

*Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015) ...........................................................14

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023)........................................................2, 13

*Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222 (1998) ...............................23, 24

*City of Philadelphia v. New Jersey,* 437 U.S. 617 (1978) ...........................................15

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019)...........................................24

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ..........................14, 25

*Elrod v. Burns*, 427 U.S. 347 (1976) .....................................................................2, 24

*Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) .......................................14

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991).........................................20, 21

*Greene v. McElroy*, 360 U.S. 474 (1959) ...................................................................22

*Healy v. Beer Inst., Inc.,* 491 U.S. 324 (1989).......................................................15, 16

*Hughes v. Fetter*, 341 U.S. 609 (1951) .................................................................23, 24

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ................................................14

7

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

*Lynch v. United States*, 292 U.S. 571 (1934)....................................................................22

*Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024).................................................15

*Meinecke v. City of Seattle*, 99 F.4th 514 (9th Cir. 2024) ...................................2, 13, 14

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ......................................................25

*NAACP v. Button*, 371 U.S. 415 (1963)...................................................................20, 21

*Nat'l Inst. of Family & Life Advocates v. Becerra (NIFLA)*, 585 U.S. 755 (2018) ........2

*Nat'l Pork Producers Council v. Ross,* 598 U.S. 356 (2023) ........................................17

*NetChoice, LLC v. Bonta*, 692 F. Supp. 3d 924 (N.D. Cal. 2023) ..................................2

*Nken v. Holder*, 556 U.S. 418 (2009) ..............................................................................2

*Ruckelshaus v. Monsanto Co.,* 467 U.S. 986 (1984) ......................................................22

*Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002)................25

*Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281 (9th Cir. 2013)......................15

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ........13

*Supreme Ct. of N.H. v. Piper,* 470 U.S. 274 (1985) ......................................................18

*Townsend v. Cnty. of Los Angeles*, 49 Cal. App. 3d 263 (Ct. App. 1975) ...................23

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ..........................................................14

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ...............................................24

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).................................13, 15, 25

8

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

*X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024) ........................................1, 2

**Statutes**

ACJA § 7-209 ....................................................................................11

**Rules**

A.R.S. Sup.Ct.Rules, Rule 33.1 ...........................................................11

A.R.S. Sup.Ct.Rules, Rule 31.1 .....................................................11, 26

FRCP 65 .......................................................................................13, 26

Local Rule 7-19.1...................................................................................3

**Constitutional Provisions**

U.S. Const. art. I, § 10, cl. 1 ..............................................................20

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

California's Assembly Bill 931 ("AB 931") poses an immediate threat to Plaintiffs' constitutional rights by imposing a sweeping regulatory scheme that purports to regulate the conduct of lawyers and legal-service providers beyond California's borders. Plaintiffs in this case are (1) Wisner Baum LLP ("Wisner Baum"), a California law firm owned by California licensed attorneys that specializes in mass tort litigation, (2) Eleos Law LLP ("Eleos Law"), a licensed Arizona alternative business structure ("ABS") owned and operated by attorneys and expert technology and operations specialists that focuses on case specific client management; and (3) Mr. R. Brent Wisner ("Mr. Wisner"), the managing partner of Wisner Baum and founding partner of Eleos Law.

AB 931, which becomes effective January 1, 2026, directly prohibits California attorneys from sharing legal fees, either directly or indirectly, with any out-of-state ABS law firm. Once in force, AB 931 will destroy existing co-counsel relationships and contracts, including the agreement between Wisner Baum and Eleos Law, which currently serves nearly 20,000 mass tort clients. This legislative overreach threatens to dismantle a business structure that has enabled innovative technology to improve case specific client management, transparency, and client outcomes thereby impairing Plaintiffs' ability to effectively represent tens of thousands of injured individuals.

AB 931 is patently unconstitutional on its face, violating the Dormant Commerce Clause, the Privileges & Immunities Clause, the Contract Clause, the Full Faith & Credit Clause, and the First, Fifth, and Fourteenth Amendments. Its imminent enforcement on January 1, 2026 will cause Plaintiffs immediate and irreparable harm. For these reasons, and those set forth more fully below, this Court should protect Plaintiffs' constitutional rights and enter a temporary restraining order.

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

## **BACKGROUND**

Traditionally, law firms are prohibited from allowing anyone aside from an attorney to hold an ownership interest. In recent years, however, Arizona, the District of Columbia and Utah authorized ABS law firms thereby permitting attorneys and non-attorneys to jointly own and operate law firms. A.R.S. Sup.Ct.Rules, Rules 31.1, 33.1; ACJA § 7-209. Specifically, Arizona allows an entity that includes nonlawyers with an economic interest in, or decision-making authority over, the firm to employ lawyers to provide legal services, so long as the entity (1) employs at least one Arizona-barred attorney who supervises the practice of law, (2) is licensed as an ABS under ACJA § 7-209, and (3) provides legal services in compliance with the Arizona Rules of the Supreme Court. A.R.S. Sup.Ct.Rules, Rule 31.1(c).

Eleos Law was founded by Mr. Wisner and licensed in Arizona as an ABS firm to address the significant operational demands of large-scale mass-tort litigation by integrating attorney oversight with modern technological capacity. Ex. B, *Declaration of R. Brent Wisner* at 1. Eleos Law is 46% non-attorney owned, with the remaining 54% owned by lawyers, including Mr. Wisner, and it operates in full compliance with Arizona's strict ethical and licensing requirements. *Id.* Eleos Law provides specialized co-counsel case specific management services—including plaintiff intake, fact-sheet preparation, medical-record review, deadline tracking, and ongoing client communication—through a first-of-its-kind, tech-enabled, human-in-the-loop case management platform developed by experienced litigation attorneys and software engineers. It is designed to improve efficiency and transparency for clients. *Id.*

Wisner Baum and its clients currently contract with Eleos Law to manage case specific client management for nearly 20,000 cases. *Id.* at 2. Pursuant to a governing contract, Eleos Law is currently overseeing the settlement of approximately 9,400 cases involving plaintiffs that developed cancer from taking a drug called Zantac. *Id.* Eleos Law helps these clients navigate five different master settlement agreement

11

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

frameworks among different defendants, which includes preparing claim forms, reviewing and supplying medical records, reviewing releases, planning for receipt and distribution of settlement proceeds, addressing liens, and answering client questions about the settlement. *Id.* at 1-2. These settlements will need administration and individual attention for years to come.

Eleos Law is also actively managing approximately 8,450 cases involving claims that toxic heavy metals in certain baby foods caused varying degrees of significant injury to children that consumed them. *Id.* at 2. These 8,450 cases involve minors and their families, which implicates even more individualized legal and case management issues. Eleos Law is tasked with collecting information, medical records, obtaining product purchase records, and helping clients file complaints and serve discovery responses in the ongoing baby food Multidistrict Litigation ("MDL") and California JCCP proceedings. *Id.* As part of that case management, the Wisner Baum and Eleos Law Case Management Services Contract ("Contract") provides for a flat per client case management fee and for Eleos to receive a 5% share of earned attorney fees. Each client also signs a separate agreement with Eleos Law acknowledging the co-counsel relationship, costs, and division of fees, as required by California law. *Id.* Every day, clients sign acknowledgments of this fee sharing. *Id.* Plaintiffs anticipate that those contracts will continue to be signed after January 1, 2026. *Id.*

However, California passed AB 931, which becomes effective on January 1, 2026. The law targets ABS firms by amending California Business and Professions Code section 6156 to prohibit fee sharing with any out-of-state ABS. A violation subjects California attorneys to disciplinary action and severe statutory penalties. AB 931 forces Plaintiffs to immediately abandon their contracts, dismantle their business model, and disrupt the representation of thousands of clients, or face the penalties.

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

## **LEGAL STANDARD**

To obtain a temporary restraining order, a plaintiff must show "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the [temporary restraining order], (3) the balance of equities tips in his favor, and (4) a [temporary restraining order] is in the public interest." *Meinecke*, 99 F.4th at 521 (quoting *Baird*, 81 F.4th at 1040 (citing *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)). The same factors apply to an application for a temporary restraining order, but a court may grant a temporary restraining order when irreparable injury may occur before the hearing for a preliminary injunction can be held. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the Ninth Circuit's "analysis is substantially identical for the injunction and the TRO"); *see also* FRCP 65(b) (allowing TRO to be granted without notice).

The Ninth Circuit "evaluate[s] these factors via a 'sliding scale approach,' such that 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a [temporary restraining order], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the [temporary restraining order] is in the public interest." *Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (citations omitted). The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Since this case involves a government actor, the balance of equities factor merges with the fourth factor, public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "Given the haste that is often necessary" when moving for a temporary restraining order, it "is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). For this reason, at this stage, "[a] party is not

13

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

required to prove her case in full" (*Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015)), and "[t]he trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial" (*Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984))).

The Court must follow "a unique likelihood-of-success standard in First Amendment cases," under which "the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction on speech." *Meinecke*, 99 F.4th at 521. When the government opposes an injunction, the third and fourth factors merge. *Id.*

## ARGUMENT

A temporary restraining order is necessary to preserve the status quo and allow for a determination on the merits, under the U.S. Constitution and the First, Fifth and Fourteenth Amendments, to protect Plaintiffs and similarly situated lawyers and law firms from unconstitutional restriction on their ability to practice law and represent injured people. If enforced, AB 931 will result in undermining California lawyers' ability to better represent clients in a mass tort setting and accept referrals, decreasing the quality of legal services provided to consumers directly, and fostering a regulatory structure that is incompatible with the practice of law and that cannot be squared with commonsense or the U.S. Constitution.  Plaintiffs meet all the requirements for injunctive relief, because (1) they are likely to succeed on the merits; (2) they will suffer irreparable harm in the absence of relief; (3) the balances of equities tips in their favors, and (4) a restraining order is in the public interest. *Winter*, 555 U.S. at 20; *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013).

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Absent judicial intervention, the State Bar, by and through Laura Enderton-Speed, and Goerge Cardona, the Executive Director and Chief Trial Counsel, respectively ("State Bar'), is poised to repeatedly violate the rights of Plaintiffs and other similarly positioned attorneys and law firms through enforcement of AB 931. The facts are simple and dispositive: Wisner Baum provides the litigation work, while Eleos Law provides the essential, tech-enabled case management services, and the firms share fees to align their incentives toward the best result for the client. AB 931 would either end their work together or impose significant penalties. This violates multiple constitutional principles. Therefore, Plaintiffs are likely to prevail on the merits of their claims, which is "the most important factor" in deciding whether to grant a temporary restraining order, and "even more so when a constitutional injury is alleged." *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024).

### A.   Dormant Commerce Clause

AB 931 greatly interferes with interstate commerce in nationwide mass-tort litigation and is unconstitutional under multiple, independent strands of Dormant Commerce Clause doctrine. *See Healy v. Beer Inst., Inc.,* 491 U.S. 324, 335–36 (1989).

First, AB 931 is facially discriminatory. A statute is "virtually per se invalid" when it "overtly blocks the flow of interstate commerce at a State's borders." *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624 (1978) ("*Philadelphia*").  AB 931 does exactly that: it categorically prohibits any California attorney from sharing legal fees with an out-of-state ABS law firm. By design, the statute singles out ABS law firms, entities which are lawfully sanctioned in jurisdictions such as Arizona and Utah, and bars commercial relationships between those out-of-state and California lawyers solely because of the firms' ownership structure and state of authorization. Supporters of AB 931 contend that California must (1) prioritize protecting individuals, especially those in need of legal assistance, from "unscrupulous actors" seeking to do business in the

15

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

legal field; (2) prioritize increasing access to justice for persons who qualify for legal assistance; and (3) exclude corporate ownership of law firms and fee-splitting with nonlawyers due to concerns that such arrangements could undermine consumer protection and attorneys' paramount obligations to their clients.[1]  Those stated concerns, however sincere, confirm that the statute is structured to disfavor a distinct class of out-of-state economic actors—ABS law firms—and to close of interstate commercial relationships with them.  Under *Philadelphia*, such facial discrimination is permissible, if at all, only upon a showing that no reasonable, nondiscriminatory alternatives could achieve the State's objectives; AB 931 falls far short of that exacting standard.

Second, AB 931 is invalid because it attempts to regulate commerce occurring wholly outside California's borders. State legislation is impermissible when "the practical effect is to control conduct beyond the boundaries of the state" or when it is applied to "commerce that takes place wholly outside of the State's borders."  *Healy*, 491 U.S. at 336. By prohibiting California attorneys from sharing fees with ABS firms organized and licensed under the laws of other jurisdictions, AB 931 effectively dictates the internal ownership structure and permissible business relationships of Arizona, District of Columbia, and Utah ABS firms as a condition of their engagement in any work that involves California counsel, even when the underlying litigation, clients, and proceedings are located entirely outside California.  In this way, AB 931 projects California's regulatory regime into other States and seeks to nullify those States' considered policy judgments to authorize ABS entities, which is the type of extraterritorial effect the Dormant Commerce Clause forbids.

Third, AB 931 is invalid because it amounts to "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening

---

[1] *See* Senate Judiciary Committee Analysis, at 14 (last accessed Nov. 17, 2025), https://sjud.senate.ca.gov/system/files/2025-06/ab-931-kalra-sjud-analysis.pdf.

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

out-of-state competitors." *Nat'l Pork Producers Council v. Ross,* 598 U.S. 356, 369 (2023). The statutes stated aims include excluding "corporate ownership of law firms and splitting legal fees with nonlawyers," precisely the model embraced by out-of-state ABS firms, and prioritizing protection from "unscrupulous actors" seeking to do business in the legal field. In practice, AB 931 burdens out-of-state ABS law firms by effectively preventing them from doing business with California lawyers and their firms, while leaving traditional, non-ABS California firms free to share fees among themselves. The practical effect is to insulate the traditional California law-firm model from competition by newer, technology-enabled ABS structures that other States have chosen to authorize – an archetypal form of economic protectionism the Dormant Commerce Clause does not tolerate.

Moreover, AB 931 is not narrowly tailored to any legitimate state interest. The State's interests in consumer protection, access to justice, and the integrity of attorney judgment are undoubtedly legitimate. Supporters of AB 931 invoke those interests explicitly, urging California to prioritize protecting individuals from unscrupulous actors, increasing access to justice for eligible clients, and excluding corporate ownership and fee-splitting arrangements that might threaten attorneys' independent professional obligations. But AB 931 is not narrowly tailored to those ends. The statute does not directly regulate California consumers or particularized harms; instead, it regulates California lawyers and their ability to associate and share fees with out-of-state counsel. And it does not condition penalties on any adverse outcomes for California clients. Instead, AB 931 disrupts arrangements, such as the Wisner Baum-Eleos Law relationship, which enhance representation through improved technology, transparency, and case management. All law firms, traditional or ABS, are profit seeking enterprises, and any risks that profit might distort professional judgment applies equally. In fact, ABS law firms undergo more scrutiny and regulation, as reflected in Arizona's detailed licensing rules. Any genuine consumer-protection

17

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

concerns can be addressed through nondiscriminatory tools, existing ethics rules, attorney disciplinary mechanisms, conflict-of-interest rules, and malpractice enforcement without closing California's borders to otherwise lawful out-of-state business models.

Thus, any local benefits of AB 931 are slim, while the burden on interstate mass-tort commerce, which depends on collaboration  and consolidated proceedings across state-lines, is substantial. Because ABS 931 is facially discriminatory, extraterritorial in effect, economically protectionist in purpose and operation, and unjustifiable, Plaintiffs are likely to prevail on their Dormant Commerce Clause Claim.

## B.    Privileges & Immunities Clause

AB 931 deprives California lawyers, including Mr. Wisner, of the constitutional privilege to engage in lawful interstate practice by substantially burdening their ability to collaborate with out-of-state law firms that have chosen to be structured as an ABS law firm in jurisdictions where they are lawful. *Supreme Ct. of N.H. v. Piper,* 470 U.S. 274, 279 (1985).

In modern mass-tort litigation, interstate collaboration is a necessity. Cases are routinely centralized in federal MDLs or consolidated in a single venue, regardless of which state the plaintiff filed in. As a result, plaintiffs' litigation firms must work across jurisdictions with co-counsel, local counsel, and court-appointed leadership teams. The Supreme Court has recognized that the Privileges and Immunities Clause protects such interstate legal practice, because it serves the functioning of the Union, promotes access to justice, and ensures plaintiffs can obtain qualified representation. *Id.*

Although attorneys must comply with the ethical rules of the states in which they practice, AB 931 goes far beyond that principle. AB 931 categorically prohibits Mr. Wisner from sharing contingent fees with a lawful Arizona law firm (Eleos Law) solely because California disapproves of Arizona's regulatory choices. By blocking

18

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

these partnerships, AB 931 prevents Mr. Wisner from accessing essential out-of-state resources required to manage nationwide mass-tort dockets.

Because the law is not narrowly tailored to any legitimate government interest, its restriction on fee-sharing with a structure legal in other jurisdictions amounts to economic protectionism that burdens Mr. Wisner, making success on this claim likely.

### C.    Contract Clause

AB 931 substantially impairs Plaintiffs' existing contractual relationships, including the co-counsel agreements between Wisner Baum and Eleos Law, and the approximately 20,000 client contracts. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244 (1978).

Plaintiffs entered into these contracts for ongoing mass tort litigations with fee sharing provisions that align incentives, allow Eleos Law to invest in technological infrastructure, and ensure unified commitment to client outcomes. Eleos Law and Wisner Baum structured their staffing, financial obligations, and litigation strategies in reliance on these bargained-for terms. AB 931's prohibition on fee sharing forces either a breach of those provisions or an immediate, massive, and disruptive restructuring of these agreements and operations.

Nor is the impairment cured by the bill's language limiting its application to contracts entered into on or after January 1, 2026. As a practical matter, AB 931 will have retroactive impact on existing contracts governing ongoing litigation: to avoid violating the statute, Plaintiffs will be compelled to amend or unwind current agreements that were lawful when formed and that remain in force during years-long mass-tort proceedings. Thus, the statute effectively renders unlawful, contractual arrangements that were entered into in reasonable reliance on the then-existing legal regime, thereby severely disrupting Plaintiffs' settled contractual expectations.

Under the Contracts Clause, U.S. Const. art. I, § 10, cl. 1, a state may not substantially impair existing contractual relationships absent a significant and

19

legitimate public purpose, and ever then only through reasonable and appropriately tailored means. *See Spannaus*, 438 U.S. at 244. Here, whatever consumer-protection interests the State invokes, AB 931 is neither narrowly tailored nor reasonably necessary to achieve them. Less restrictive, non-discriminatory tools, such as enforcement of existing ethics rules, disciplinary mechanisms, conflict-of-interest rules, disclosure requirements, and malpractice remedies, are fully available to address any legitimate concerns without dismantling long-standing contractual arrangements and business structures. Because AB 931 violates Plaintiffs' fundamental right to contract without being narrowly tailored to a legitimate government interest, Plaintiffs are likely to succeed on this claim as well.

### D. First Amendment

AB 931 infringes on Plaintiffs' rights to practice law—including communicating with clients, selecting co-counsel, creating strategy, and collaborating across state lines—which constitutes a protected form of freedom of expression and association under the First Amendment. *See NAACP v. Button*, 371 U.S. 415, 428 (1963); *see Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1058 (1991). In *NAACP*, the Court recognized that the provision of legal assistance in pursuit of clients' rights is "a form of political expression" and "political association" (371 U.S. at 429-30), and *Gentile* likewise acknowledges that lawyers do not "surrender their first Amendment rights at the courthouse door" (501 U.S. at 1073).

AB 931 will have a substantial chilling effect on Plaintiffs' protected First Amendment rights. The statute restricts which out-of-state counsel and affiliated entities California lawyers may associate with and, by extension, how they convey legal advice and strategy in complex, multi-jurisdictional litigation. By effectively dictating which out-of-state business partners Plaintiffs may collaborate with, AB 931 intrudes on their expressive and associational choices in representation of their clients and impedes their ability to pursue and communicate legal strategies through chosen

20

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

co-counsel. It also restricts attorneys' ability to advocate for and participate in modern, alternative business models that expand access to legal services and enhance representation, forms of professional expression closely tied to the exercise of legal judgment. This state-imposed constraint on professional judgment and association implicates the First Amendment. *See Gentile*, 501 U.S. 1030.

AB 931 cannot withstand First Amendment scrutiny. As the Supreme Court has made clear, "a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *NAACP*, 371 U.S. at 439. Even assuming the States' asserted interests in consumer protection and the integrity of legal services are substantial or compelling, AB 931 is not narrowly tailored to advance those interests. Less restrictive alternatives abound, including enforcement of existing ethical rules, disciplinary mechanism, conflict-of-interest standards, disclosure requirements, and malpractice remedies, which do not prohibit Plaintiffs from associating with out-of-state ABS co-counsel or participating in lawful, technology-enabled business models. Because AB 931 burdens core expressive and associational activities in a manner that is far broader than necessary to serve any legitimate state interests, Plaintiffs are likely to succeed on their First Amendment claim..

For these reasons, Plaintiffs' First Amendment cause of action is likely to succeed.

### E.     Fifth and Fourteenth Amendment (Takings Clause and Substantive Due Process)

AB 931 violates the Fifth and Fourteenth Amendments in two distinct ways. First, AB 931 substantially impairs and effectively destroys Plaintiffs' vested property rights in their existing contracts by prohibiting ongoing performance of fee-sharing terms with out-of-state ABS law firms. This renders key terms unlawful and constitutes a regulatory taking, because it destroys the economic value of the agreements without prior and just compensation to Plaintiffs and without due process.

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

*See Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a State, or the United States.").  By rendering core, bargained-for terms of Plaintiffs' agreements unlawful and stripping those contracts of their economic value, without prior, just compensation and without adequate procedural safeguards, ABS 931 operates as an uncompensated regulatory taking of Plaintiffs' property interests. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984) (recognizing that intangible property interests, such as trade secrets and other valuable rights conferred by law, are protected by the Takings Clause).

Second, ABS 931 violates Substantive Due Process, because it unreasonably interferes with Plaintiffs' economic liberty and their right to practice law. By categorically prohibiting California attorneys from collaborating with, and entering fee-sharing arrangements with, lawful out-of-state ABS law firms, AB 931 burdens the ability of lawyers and law firms to structure an inherently interstate practice, to select and associate with cocounsel of their choice, and to pursue their chosen profession on terms that serve clients' interests. The Supreme Court has long recognized that the freedom to pursue one's chosen occupation is an important liberty interest safeguarded by the Due Process Clause. *See Greene v. McElroy*, 360 U.S. 474, 492 (1959) (noting the historic respect for "the right to follow a chosen trade or profession"); *see also Townsend v. Cnty. of Los Angeles*, 49 Cal. App. 3d 263, 267 (Ct. App. 1975) (acknowledging the right to pursue a lawful profession as a protected interest).

As explained above, AB 931 bears no rational relationship to its stated interests in consumer protection, access to justice, or the integrity of attorney judgment; indeed, it undermines those interests by disrupting successful co-counsel relationships, impairing representation for thousands of clients, and foreclosing modern, technology-enabled structures that expand access to legal services. Because AB 931 arbitrarily destroys vested property interests and imposes an irrational, heavy-handed restraint on

22

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' ability to practice their profession and structure their lawful business
relationships, Plaintiffs are likely to succeed on their Fifth and Fourteenth Amendment
claims.

### F.    Full Faith & Credit Clause

Finally, AB 931 violates the Full Faith and Credit Clause, which limits
California's ability to refuse to give effect to the valid public acts of a sister state, in
this case Arizona, merely because it disagrees with that state's regulatory policy. *See
Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232-34 (1998); *see also Hughes
v. Fetter*, 341 U.S. 609, 611–13 (1951).

Arizona has enacted laws expressly authorizing ABS law firms to operate as
licensed providers of legal services. Arizona's regulatory scheme thus constitutes a
"public act" that defines entities like Eleos Law as duly authorized law practices under
Arizona law. AB 931 conflicts with, and effectively nullifies, that Arizona policy
choice. By categorically prohibiting California attorneys from sharing fees with an
Arizona-licensed ABS law practice solely because of its Arizona-authorized ownership
structure, California refuses to recognize Eleos Law as what Arizona law declares it to
be: a legal law firm authorized to practice in that jurisdiction. In so doing, California
denies Arizona's public act the "force and effect" required by the Full Faith and Credit
Clause, not on the basis of any neural forum rule, but precisely because of
disagreement with Arizona's policy judgment about ABS entities. *See Hughes*, 341
U.S. 611–13; *Baker*, 522 U.S. 233.

Accordingly, Plaintiffs are likely to succeed on their Full Faith and Credit
Clause claim.

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT THE COURT'S INTERVENTION.

The impending enforcement date of AB 931 on January 1, 2026, and its prohibition on fee sharing between Eleos Law and Wisner Baum, create a clear and imminent threat of irreparable harm.

First, the threatened violation of Plaintiffs' constitutional rights creates irreparable injury. The Ninth Circuit has held that a party seeking a restraining order "in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) ("'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[.]'") (citing *Elrod*, 427 U.S. at 373).  More generally, because constitutional violations are not often adequately remedied through damages, the Ninth Circuit does "not require a strong showing of irreparable harm for constitutional injuries."  *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).  Because Plaintiffs have, at minimum, raised a colorable claim that their constitutional rights to practice law, associate, and contract will be violated, they have satisfied the irreparable injury requirement.

Second, AB 931's enforcement date of January 1, 2026 is imminent. Absent a TRO, Plaintiffs must choose between: (1) continuing their existing, ethical co-counsel relationship on 20,000 cases and risking State Bar discipline and severe statutory penalties of $10,000 per violation or three times actual damages or (2) breaching client and co-counsel agreements, jeopardizing thousands of claims, and dismantling a complex and lawfully developed business model.

These harms—the deprivation of constitutional rights, the threat of monetary penalties, State Bar discipline including disbarment, and the destruction of a lawfully formed business—constitute immediate and irreparable harm.

24

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

### III.   THE PUBLIC'S INTEREST AND BALANCE OF EQUITIES WEIGH IN FAVOR OF PLAINTIFFS.

Finally, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Because this case involves government actors, the balance-of-equities factor merges with the fourth factor, public-interest. *Drakes Bay Oyster Co.*, 747 F.3d at 1092.

Here, both the balance of hardships and the public interest weigh heavily in favor of injunctive relief. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002)). Furthermore, granting the TRO will preserve the status quo and allow the ongoing, ethical, and successful representation of approximately 20,000 clients to continue without disruption.

A temporary restraining order is, by nature, limited in both duration and scope. Plaintiffs do not seek to stop the bill permanently now, but merely to pause its enforcement for enough time to resolve the matter on the merits at the preliminary injunction or substantive motion stage. This limited pause preserves the status quo and prevents immediate, irreversible harm while the Court considers the substantial legal questions presented.

Conversely, Plaintiffs' proposed relief would not impose hardship on Defendants, because it only prevents them from enforcing an unconstitutional law. The State Bar and the Attorney General retain all other powers to regulate the practice of law, enforce existing rules of professional conduct, and protect consumers. ABS law firms present no distinctive problem that cannot be addressed using these existing mechanisms. As explained above, Eleos Law is a licensed law practice in Arizona whose supervising attorneys owe fiduciary duties to their clients and are subject to discipline in California. *See* A.R.S. Sup.Ct.Rules, Rule 31.1(c). Any alleged hardship

25

on Defendants is outweighed by the irreparable harm and unconstitutional injury imposed on Plaintiffs and their clients by AB 931.

## IV.    ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION.

Plaintiffs further request that the Court issue an Order to Show Cause why a preliminary injunction should not issue enjoining Defendants from enforcing or threatening to enforce AB 931 and Business and Professions Code section 6156 against Plaintiffs during the pendency of this action. In light of the January 1, 2026 effective date and intervening holidays, good cause exists to set an expedited briefing schedule and hearing date. Plaintiffs respectfully request that the Court set a hearing on the Order to Show cause on or before January 23, 2026, and order that Defendants file any opposition by January 9, 2026, and Plaintiffs file any reply by January 16, 2026.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant this *Ex Parte* Application for a Temporary Restraining Order; and (2) issue an Order to Show Cause directing Defendants to appear and show cause why a preliminary injunction should not issue enjoining enforcement of AB 931 and Business and Professions Code section 6156 against Plaintiffs during the pendency of this action.

Respectfully submitted,

Dated:  December 12, 2025

By:  /s/ R. Brent Wisner
R. Brent Wisner, Esq. (SBN: 276023)
rbrentwisner@wisnerbaum.com
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233

*Attorney Pro Se*

26

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING
ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

**WISNER BAUM LLP**

By:  /s/ Timothy A. Loranger
Timothy A. Loranger, Esq. (SBN: 225422)
tloranger@wisnerbaum.com
Behram V. Parekh, Esq. (SBN: 180361)
bparekh@wisnerbaum.com
Crawford Appleby, Esq. (SBN: 292010)
cappleby@wisnerbaum.com
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233

*Attorneys for Plaintiff Wisner Baum LLP*

**ELEOS LAW LLP**

By:  /s/ Helen E. Tokar
Helen E. Tokar, Esq. (SBN: 283649)
htokar@eleoslaw.com
2 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: (623) 253-9531

*Attorney for Plaintiff Eleos Law LLP*

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

**COMPLIANCE WITH LOCAL RULE 11-6-1 WORD LIMIT**

The undersigned, counsel of record for Wisner Baum LLP certifies that this brief contains 6,948 words which complies with the word limit of L.R. 11-6.1.

Dated:  December 12, 2025

**WISNER BAUM LLP**

By:  /s/ Timothy A. Loranger
Timothy A. Loranger, Esq. (SBN: 225422)
tloranger@wisnerbaum.com
Behram V. Parekh, Esq. (SBN: 180361)
bparekh@wisnerbaum.com
Crawford Appleby, Esq. (SBN: 292010)
cappleby@wisnerbaum.com
11111 Santa Monica Blvd., Ste. 1750
Los Angeles, California 90025
Telephone: (310) 207-3233

*Attorneys for Plaintiff Wisner Baum LLP*

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE BY ECF AND EMAIL**

I hereby certify that on December 12, 2025, a copy of the foregoing was filed via the court's CM/ECF system which will electronically serve a copy to all counsel who have appeared in this case.

The foregoing was separately served by email to all counsel of record with notice that an opposition must be filed within 24 hours.

/s/ Timothy A. Loranger
Timothy A. Loranger

29

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES