UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
|---|---|---|---|
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **1** of **16** |

Present: The Honorable   DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFFS'** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER [24]**

On November 25, 2025, Plaintiffs R. Brent Wisner, Wisner Baum, LLP, and Eleos Law LLP filed a Complaint against Defendants Attorney General of California, Rob Bonta, in his official capacity, and the State Bar of California. [Doc. # 1.] On December 9, 2025, Plaintiffs filed a First Amended Complaint against Defendants California Attorney General, Rob Bonta, Executive Director of the State Bar of California, Laura Enderton-Speed, and Chief Trial Counsel of the State Bar of California, George Cardona, each in their official capacities. [Doc. # 19 ("FAC").]

Before the Court is Plaintiffs' *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue, filed on December 12, 2025. [Doc. # 24 ("TRO App.").] The TRO App. is fully briefed. [Doc. ## 29 ("AG Opp."), 30 ("State Bar Opp."), 32 ("Reply").] After careful consideration of the parties' written submissions, the Court **DENIES** Plaintiffs' TRO App. because they have neither demonstrated a likelihood of success on the merits nor that they are likely to suffer irreparable harm.

I.
BACKGROUND

A.   **California Assembly Bill 931**

California Assembly Bill 931 ("AB 931") was first introduced to the state legislature on February 19, 2025. In part, AB 931 prohibits California lawyers from sharing any fees, either directly or indirectly, with any out-of-state "alternative business structure" ("ABS") unless certain requirements are met. *See* A.B. 931, Ch. 565, 2025–2026 Reg. Sess. (Cal. 2025); Cal. Bus. & Prof. Code § 6156. In September 2025, the state assembly and senate voted to pass AB 931, and on October 10, 2025, the bill was approved by the Governor and filed with the Secretary of State. *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **2** of **16** |

The provision prohibiting fee sharing with any out-of-state ABS is codified under California Business and Professions Code section 6156 and will become effective on January 1, 2026.[1]  An ABS is defined as "any entity that provides legal services while allowing nonattorney ownership, management, or decisionmaking authority."  Cal. Bus. & Prof. Code § 6156(c).  Section 6156 applies only to contracts entered into on or after January 1, 2026.  *Id.* § 6156(g).  Furthermore, Section 6156 will remain in effect only until January 1, 2030.  *Id.* § 6156(h).  Section 6156 provides that a violation "shall constitute cause for the imposition of discipline by the State Bar of California and shall subject the attorney to the following penalties:  (1) Statutory damages of ten thousand dollars ($10,000) per violation or three times the actual damages incurred by the consumer, whichever is greater.  (2) Attorney's costs and fees.  (3) Injunctive or declaratory relief."  *Id.* § 6156(b)(1)–(3).

According to the authors of the bill, "[T]his bill codifies the protections of Rule 5.4 of the California Rules of Professional Conduct by prohibiting California attorneys from splitting fees with out-of-state law firms that share revenues with non-attorneys, including large hedge funds.  Rule 5.4 is designed to ensure that an attorney's legal judgment and not profit, drive legal decisions.  This bill will ensure that other state's less protective attorney regulations cannot be used as a loophole to take advantage of California consumers."  *See* State Bar Act: consumer legal funding: Hearing on AB 931 Before the Sen. Judiciary Committee, 2025–2025 Reg. Sess. (Cal. 2025) (Hearing Date July 1, 2025).

**B.**     **Plaintiffs' FAC**

Plaintiff R. Brent Wisner is a California-based attorney who leads the California law firm, Wisner Baum, LLP, and an Arizona ABS law firm, Eleos Law LLP.  Declaration of R. Brent Wisner ("Wisner Decl.") at ¶ 2 [Doc. # 24-10].[2]  The two firms work symbiotically on mass torts litigation.  *Id.* at ¶ 6.  Wisner Baum, LLP employs approximately 20 attorneys and conducts traditional litigation, whereas Eleos Law LLP is 46% owned by non-lawyers and provides case-management services.  FAC at ¶¶ 14–15; Wisner Decl. at ¶ 3.  The remaining 54% of Eleos Law is owned by lawyers, including Wisner.  Wisner Decl. at ¶ 3.  Eleos Law receives a flat case management fee and a 5% share of earned attorney fees from Wisner Baum.  *Id.* at ¶ 8.  Clients

---

[1] References herein to California Business and Professions Code section 6156 are to the version of the statute effective on January 1, 2026.

[2] Arizona allows certain law firms to form as an ABS such that nonlawyers can own law firms, in part or in whole.  FAC at ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
|---|---|---|---|
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **3** of **16** |

sign separate agreements with Eleos Law "acknowledging the co-counsel relationship, costs, and division of fees." *Id.*

Plaintiffs seek declaratory and injunctive relief, alleging that AB 931 violates the U.S. Constitution's Dormant Commerce Clause, Privileges and Immunities Clause, Contract Clause, and the First, Fifth, and Fourteenth Amendments, pursuant to 42 U.S.C. section 1983. *See* FAC. On December 12, 2025, Plaintiffs filed the instant TRO App. requesting that the Court issue a TRO enjoining Defendants from enforcing or threatening to enforce AB 931 against Plaintiffs. Wisner attests that, absent a TRO, he will be forced to either "(a) terminate or materially alter Eleos Law's existing contracts with Wisner Baum LLP, including eliminating the 5% co-counsel fee component for any work performed after [January 1, 2026], or (b) risk violating AB 931 and being subject to civil penalties and State Bar discipline." Wisner Decl. at ¶ 12. Plaintiffs further request that the Court issue an Order to Show Cause why a preliminary injunction should not issue. TRO App. at 27.[3]

## II.
## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctive relief. The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO, similar to a preliminary injunction, is "an extraordinary remedy never awarded as a right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

A plaintiff seeking interim injunctive relief must generally show the following: "(1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20). The Ninth Circuit also permits a "sliding scale" approach where, alternatively, a court may issue an injunction when "serious questions going to the merits and a balance of hardships [] tips sharply towards the plaintiff," provided that "the plaintiff shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Farris*, 677 F.3d at 864 (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)) (internal quotation marks omitted).

---

[3] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
|---|---|---|---|
| Title | R Brent Wisner, et al. v. Rob Bonta, et al. | Page | **4** of **16** |

Likelihood of success on the merits is the most important *Winter* factor. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). If a movant fails to show a likelihood of success on the merits, the Court need not consider the other factors in the absence of serious questions going to the merits. *Id.*; *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

### III.
### DISCUSSION

**A.  Likelihood of Success on the Merits**

Plaintiffs' FAC alleges six claims against Defendants for violations of the U.S. Constitution's Dormant Commerce Clause, Privileges and Immunities Clause, Contract Clause, and the First, Fifth, and Fourteenth Amendments. *See* FAC. For the reasons stated below, the Court does not find likelihood of success on the merits or that sufficiently serious questions have been raised as to the merits of these claims.

**1.  Dormant Commerce Clause Claim**

The "chief purpose" underlying the dormant Commerce Clause is "to limit the power of States to erect barriers against interstate trade." *Individuals for Responsible Govt., Inc. v. Washoe Cnty.*, 110 F.3d 699, 703 (9th Cir. 1997). At the "very core" of the Supreme Court's dormant Commerce Clause jurisprudence is an antidiscrimination principle: the Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (internal citations and quotation marks omitted). Discrimination in this context "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (internal quotation marks omitted). The Supreme Court warns courts to proceed with "extreme caution" before "[p]reventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause." *Pork Producers*, 598 U.S. at 390 (internal quotation marks omitted).

Plaintiffs advance three theories of dormant Commerce Clause violations. First, Plaintiffs contend AB 931 is facially discriminatory because it "overtly blocks the flow of interstate commerce at a State's borders" by "categorically prohibit[ing] any California attorney from sharing legal fees with an out-of-state ABS law firm." TRO App. at 16. Section 6156 prohibits California attorneys from directly or indirectly sharing legal fees "with an out-of-state alternative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
|---|---|---|---|
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **5** of **16** |

business structure." Cal. Bus. & Prof. Code § 6156(a). As Defendants point out, however, current rules of professional conduct already prohibit California lawyers from sharing fees with nonlawyers or organizations unauthorized to practice law in California, and additionally, from forming an ABS in California. *See* Cal. R. Prof. Conduct 5.4(a), (d)(1)–(3). Since California lawyers are equally prohibited from sharing fees with a California ABS—by virtue of ABS firms being banned in California—as they are from sharing fees with an Arizona ABS, Plaintiffs' facial discrimination argument fails.[4]

Second, Plaintiffs argue that AB 931 amounts to "economic protectionism" because it is designed to benefit in-state economic interests by burdening out-of-state competitors. TRO App. at 17–18 (citing *Pork Producers*, 598 U.S. 356). Plaintiffs' argument focuses on alleged burdens on out-of-state ABS firms. *See* TRO App. at 18 ("In practice, AB 931 burdens out-of-state ABS law firms by effectively preventing them from doing business with California lawyers and their firms, while leaving traditional, non-ABS California firms free to share fees among themselves."); Reply at 18 (AB 931 "effectively bars ABS law firms from practicing law in California generally."). But Plaintiffs do not establish that this purported burden on out-of-state ABS firms was designed to benefit in-state economic interests. This is not a situation where California is gaining an economic advantage by allowing its own attorneys to form ABS firms while simultaneously disallowing fee sharing with out-of-state ABS firms. While "traditional, non-ABS California firms" are free to share fees among themselves, non-ABS, out-of-state firms can do so as well. Furthermore, Plaintiffs themselves allege that AB 931 harms the interests of California lawyers and law firms. *See*, *e.g.*, FAC ¶ 39 ("AB 931 threatens . . . the broader ability of California firms to participate in ABS-supported mass-tort work or referrals."); *id.* at ¶ 44 ("California lawyers . . . will, necessarily, be less competitive in the mass tort marketplace."); *id.* at ¶ 49. Therefore, Plaintiffs fail to show that AB 931 amounts to "economic protectionism."

Third, Plaintiffs assert that AB 931 is impermissible because it attempts to regulate commerce occurring outside of California. TRO App. at 17. The dormant Commerce Clause prohibits any state statute that "directly controls commerce occurring wholly outside the

---

[4] Plaintiffs' reliance on *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017), is unavailing. In *Nationwide Biweekly*, the Ninth Circuit found a California statute discriminatory against out-of-state economic interests where an "in-state corporation may obtain a [prorating] license directly, while the out-of-state corporation must either incorporate in California or create a subsidiary incorporated in California." *Id.* at 737. Existing California law required anyone acting as a prorater in California to obtain a prorate license. *Id.* at 736. The discriminatory statute, however, required out-of-state corporations to have a license *plus* incorporate in California. Here, there is no such *plus* requirement. California lawyers are already prohibited from forming an ABS. AB 931 does not provide additional hurdles only for out-of-state firms—rather, it prohibits California lawyers from circumventing the preexisting rule against fee sharing with any organization structured as an ABS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
|---|---|---|---|
| Title | R Brent Wisner, et al. v. Rob Bonta, et al. | Page | 6 of 16 |

boundaries of a State." *Rocky Mountain*, 730 F.3d at 1101 (quoting *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989)). Plaintiffs argue that "AB 931 effectively dictates the internal ownership structure and permissible business relationships of Arizona, District of Columbia, and Utah ABS firms as a condition of their engagement in any work that involves California counsel. . . ." TRO App. at 17. As discussed above, however, Plaintiffs have not established that AB 931 amounts to economic protectionism. "[I]n the absence of economic protectionism, the nearly inevitable extraterritorial effects that state laws produce does not mean these laws run afoul of the Commerce Clause's negative proscription." *Flynt v. Bonta*, 131 F.4th 918, 929 (9th Cir. 2025). Furthermore, AB 931 regulates conduct of *California* attorneys and law firms within the state. The California legislature does not purport to control whether Arizona, the District of Columbia, or Utah can have their own in-state firms. The Ninth Circuit has "previously rejected arguments that state laws treating out-of-state and in-state entities similarly, but which prevent them from structuring or operating their business as they prefer, reflect improper discrimination in favor of in-state interests." *Id.* at 927. California lawyers may not form an ABS in-state and AB 931 prevents circumvention of that rule. "That plaintiffs may have to forgo other business opportunities does not mean" that AB 931 "discriminate[s] in a way that the dormant Commerce Clause prohibits." *Id.*

"Absent discrimination, [the Court] will uphold the law 'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Rocky Mountain*, 730 F.3d at 1087–88 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Plaintiffs "must demonstrate that a challenged law imposes a 'substantial' or 'significant' burden on interstate commerce" before the Court conducts the balancing analysis. *Flynt*, 131 F.4th at 925. Plaintiffs assert that "AB 931 burdens out-of-state ABS law firms by effectively preventing them from doing business with California lawyers and their firms" and specific to Plaintiffs, "enforcement of AB 931 will have a significantly negative impact on their business together." Reply at 17. Such cursory assertions are insufficient to demonstrate that AB 931 imposes a substantial or significant burden on interstate commerce.

In sum, Plaintiffs have not shown a likelihood of success or serious questions going to the merits of their dormant Commerce Clause claim.

### 2. Privileges and Immunities Clause Claim

Plaintiffs allege AB 931 violates the Privileges and Immunities Clause because it burdens California attorneys' ability to collaborate with out-of-state ABS law firms. TRO App. at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
|---|---|---|---|
| Title | R Brent Wisner, et al. v. Rob Bonta, et al. | Page | 7 of 16 |

Article IV, § 2 of the Constitution provides that the "Citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States." U.S. Const., art. IV, § 2. Challenges under the Privileges and Immunities Clause involves a two-step inquiry: (1) the plaintiff must show that the challenged law falls within the purview of the Privileges and Immunities Clause; and (2) if the plaintiff accomplishes step one, then the burden shifts to the state to show that the challenged law is "closely related to the advancement of a substantial state interest." *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016) (quoting *Supreme Ct. of Virginia v. Friedman*, 487 U.S. 59, 65 (1988)). "The purpose of the Privilege[s] and Immunities Clause is to prevent a state from discriminating against citizens of other states in favor of its own." *Nat'l Ass'n for the Advancement of Multijurisdictional Prac. v. Berch*, 773 F.3d 1037, 1046 (9th Cir. 2014) (internal quotation marks omitted). "Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause." *Giannini v. Real*, 911 F.2d 354, 357 (9th Cir. 1990). Therefore, under step one, "[a] plaintiff must show that the challenged law treats nonresidents differently from residents and impinges upon a 'fundamental' privilege or immunity protected by the Clause." *See Marilley*, 844 F.3d at 846.

AB 931 does not discriminate on the basis of non-residence or citizenship. Regardless of residency or citizenship, attorneys licensed in the state of California are prohibited from sharing fees with out-of-state ABS firms and from forming an ABS within California. Given the lack of discrimination shown against out-of-state attorneys in favor of California attorneys, Plaintiffs' Privileges and Immunities Clause claim is unlikely to succeed. *See Berch*, 773 F.3d at 1046 (noting that the purpose of the Privileges and Immunities Clause is to prevent a state from discriminating against citizens of other states in favor of its own); *Law. for Fair Reciprocal Admission v. U.S.*, 141 F.4th 1056, 1066–67 (9th Cir. 2025) (holding federal court admission rules did not violate Article IV's Privileges and Immunities Clause where the rules did not discriminate between resident and nonresident attorneys).

    **3.    Contract Clause Claim**

The U.S. Constitution bars states from passing any "Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people." *Energy Reserves Grp. v. Kansas Power and Light Co.*, 459 U.S. 400, 410 (1983) (internal quotation marks omitted). Since "not all laws affecting pre-existing contracts violate the [Contracts] Clause," courts apply a two-part test. *Ashley Sveen v. Kaye Melin*, 584 U.S. 811, 819 (2018). First, the "threshold issue is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Id.* (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). Second, if there is substantial impairment, "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
|---|---|---|---|
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **8** of **16** |

inquiry turns to the means and ends of the legislation." *Id.* Specifically, the Supreme Court has asked "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose." *Id.* (quoting *Energy Reserves Grp.*, 459 U.S. at 411–12).

The threshold inquiry—whether the state law substantially impairs a contractual relationship—has three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992). Plaintiffs allege AB 931 substantially impairs existing contractual relationships, including the co-counsel agreements between Wisner Baum and Eleos Law, and thousands of client contracts. FAC at ¶¶ 88–89. Both sides acknowledge that Section 6156 applies only to contracts entered on or after January 1, 2026. *See* Cal. Bus. & Prof. Code ¶ 6156(g). Defendants contend that no *existing* contractual relationships are impaired. Meanwhile, Plaintiffs argue that AB 931 is "highly likely" to have a "retroactive impact" because existing contracts associated with ongoing litigation will need to be amended or adjusted once AB 931 is effective. FAC at ¶ 87. For the co-counsel agreements, Plaintiffs claim AB 931 will retroactively impair the "fee sharing provisions that [] align incentives, allow Eleos Law to invest in technological infrastructure, and ensure unified commitment to optimal client outcomes." FAC at ¶ 88. As for client contracts, Plaintiffs claim "there are still several thousand outstanding contracts that are being signed by baby food clients every day." FAC at ¶ 88.

Plaintiffs' argument rests on speculation. Plaintiffs provide no evidence regarding the anticipated types of amendments or adjustments needed for existing contracts, whether those amendments are substantial, or whether they are necessary. Without concrete evidence, the Court is unable to conclude that AB 931 impairs existing contracts, such that the Contract Clause is implicated. While AB 931 may prevent Plaintiffs from entering new client contracts, following January 1, 2026, that requirement does not impair an *existing* client contract. *See McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987) ("The Constitution protects freedom of contract only by limiting the states' power to modify or affect contracts already formed.").

Even if Plaintiffs could establish a substantial impairment, the Court finds that Plaintiffs have not successfully shown that the State does not have "a significant and legitimate public purpose . . . of remedying a broad and general social or economic problem." *Energy Reserves Grp.*, 459 U.S. at 411–12. Defendants assert that "AB 931 furthers California's important interest in regulating attorney conduct and maintaining independence and ethical behavior in the legal profession." AG Opp. at 20; State Bar Opp. at 9 n.1. Plaintiffs argue that there are "[l]ess restrictive, non-discriminatory tools" that are "fully available to address any legitimate concerns

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
|---|---|---|---|
| Title | R Brent Wisner, et al. v. Rob Bonta, et al. | Page | 9 of 16 |

without dismantling long-standing contractual arrangements and business structures." TRO App. at 21. Notably, Plaintiffs do not challenge the legitimacy or constitutionality of California Rule of Professional Conduct 5.4(d), which prohibits the formation of an ABS in California. Absent a challenge to the legitimate purpose behind Rule 5.4(d), the Court finds that AB 931 is appropriately and reasonably drawn to advance its interest in ensuring that current rules, including Rule 5.4(d), are secured from loopholes. "[C]ourts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure" where the state itself is not a contracting party. *Energy Reserves Grp.*, 459 U.S. at 412–13.

Therefore, the Court concludes that the Contract Clause is not implicated here, and Plaintiffs have not shown a likelihood of success as to this claim.

### 4. First Amendment Claim

Plaintiffs contend that "AB 931 infringes on Plaintiffs' right to practice law . . . which constitutes a protected form of freedom of expression and association under the First Amendment." TRO App. at 21. They further assert that "AB 931 will have a substantial chilling effect on Plaintiffs' protected First Amendment rights." *Id.*

Plaintiffs primarily rely on *NAACP v. Button*, 371 U.S. 415 (1963), and *In re Primus*, 436 U.S. 412 (1978), in support of their argument. These cases, however, are inapposite. *Button* and *In re Primus* involved political expression where "the lawyers' own expressive interests align with" their clients' First Amendment expressive rights. *See Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Depts.*, 852 F.3d 178, 187 (2d Cir. 2017) ("The *Button* line of cases might casually be characterized as reflecting lawyers' expressive rights in the causes they pursue—when those causes implicate expressive values []."). This case seemingly involves "lawyers' generic act of pursuing litigation on behalf of any client." *Id.* "The Supreme Court has never held, however, that attorneys have their *own* First Amendment right as attorneys to associate with current or potential clients, or their *own* right to petition the government for the redress of their clients' grievances when the lawyers are acting as advocates for others, and not advocating for their own cause." *Id.* at 186 (emphasis in original).

Plaintiffs argue that the "generic act of litigation" framing does not apply here because "[t]he Supreme Court has recognized that 'litigation is not a technique of resolving private differences[,]' but rather, it is a 'form of political expression' and 'political association.'" Reply at 23 (citing *In re Primus*, 436 U.S. at 428 (quoting *Button*, 371 U.S. at 431)). Plaintiffs gloss over important context that makes the instant case distinguishable. In *Button*, the Supreme Court said, "*In the context of NAACP objectives*, litigation is not a technique of resolving private differences;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
|---|---|---|---|
| Title | R Brent Wisner, et al. v. Rob Bonta, et al. | Page | **10** of **16** |

it is the means for achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country. It is thus a form of political expression." 371 U.S. at 429 (emphasis added). In *In re Primus*, the Supreme Court drew a similar conclusion regarding political expression "[f]or the ACLU, as for the NAACP." 436 U.S. at 428–29. Plaintiffs do not address how the litigation they conduct involves political expression as delineated in the *Button* and *In re Primus* cases. Instead, Plaintiffs contend that "[t]he controlling point is that litigation-related association to pursue legal rights is protected First Amendment activity. . . ." Reply at 24. Plaintiffs do not provide, and the Court has not found, case law that supports Plaintiffs' expansive proposition. Therefore, Plaintiffs fail to show a likelihood of success or serious questions going to the merits of their First Amendment claims.

### 5. Fifth and Fourteenth Amendment Claims

Plaintiffs advance two arguments that AB 931 violates the Fifth and Fourteenth Amendments of the Constitution. First, Plaintiffs argue that AB 931 violates the Takings Clause because it "substantially impairs and effectively destroys Plaintiffs' vested property rights in their existing contracts" without due process and prior and just compensation. TRO App. at 22. Second, Plaintiffs contend AB 931 violates substantive Due Process by unreasonably interfering with their economic liberty and right to practice law. *Id.* at 23.

#### a. Takings Clause Claim

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation. U.S. Const. amend. V, XIV. Beyond the classic taking where the government takes physical property, the Supreme Court recognizes regulatory takings where the government "instead imposes regulations that restrict an owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021). There are two "relatively narrow categories" of regulatory action that constitute *per se* takings under the Fifth Amendment: 1) where the government "requires an owner to suffer a permanent physical invasion of her property"; and (2) where a regulatory action completely deprives an owner of all economically beneficial use of her property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). For all other regulatory takings challenges, courts apply the standard set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). *Penn Central* instructs courts to consider the following factors as principal guidelines: (1) the "economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Id.* at 124.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
|---|---|---|---|
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **11** of **16** |

Plaintiffs' alleged constitutionally protected property interests are the contracts between Wisner Baum and Eleos Law. *See Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States."). Plaintiffs do not clearly identify the category of regulatory taking under which they believe AB 931 falls. The Court does not see evidence to support an argument that AB 931 fits into either category of *per se* regulatory takings. Therefore, the *Penn Central* standard is applicable here.

Relevant to a court's analysis of the first *Penn Central* factor is a comparison of the value that has been taken from the property with the value that remains in the property. *See Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630–31 (9th Cir. 2020). Plaintiffs fail to provide sufficient evidence to ascertain AB 931's economic impact. Plaintiffs cursorily assert that AB 931 "destroys the economic value" of the existing contracts and that "the loss of vested property is 100%" if AB 931 is allowed to be enforced against them. TRO App. at 22; Reply at 26. The evidence submitted by Plaintiffs via declaration, however, is not so categorical and is instead, rather vague. *See, e.g.*, Wisner Decl. at ¶ 12 ("Absent a temporary restraining order, I will be forced [] to either (a) terminate *or materially alter* Eleos Law's existing contracts with Wisner Baum LLP . . . ."); *id.* at ¶ 13 ("If we are forced to abandon *or rapidly restructure* these arrangements, the representation . . . will be materially disrupted. . . ."); *id.* at ¶ 14 (discussing competitive disadvantages and lost opportunities, rather than a total loss of property). Cases "have long established that mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Rancho De Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090 (9th Cir. 2015) (collecting cases); *see also Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (92.5% diminution in value did not amount to taking). Here, Plaintiffs fail to present sufficient evidence regarding the economic impact of AB 931, especially given the fact that it does not operate retroactively to undo existing contracts. Plaintiffs also do not discuss what "distinct investment-backed expectations" AB 931 interferes with in any of their briefing. Since Plaintiffs fail to establish the first two *Penn Central* factors, the Court does not address the remaining factor. *See Bridge Aina*, 950 F.3d at 630 (noting that the first and second *Penn Central* factors are the primary factors).

Plaintiffs are unlikely to succeed on their Takings Clause claim and fail to raise serious questions as to the merits.

    **b.**    **Substantive Due Process Claim**

Plaintiffs claim AB 931 violates their substantive due process rights because it interferes with their economic liberty and freedom to pursue their chosen profession. FAC at ¶ 117. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **12** of **16** |

support of their argument, Plaintiffs cite to *Greene v. McElroy*, 360 U.S. 474 (1959), and *Townsend v. Cnty. of Los Angeles*, 49 Cal. App. 3d 263, 267 (1975), for the proposition that the freedom to pursue one's chosen profession is a protected liberty interest. Plaintiffs cite no authority for the proposition that economic liberty is guaranteed by substantive due process.

Under the Fifth Amendment, applicable to the States through the Fourteenth Amendment, California may not deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amend. X, XIV. Substantive due process "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (internal citations and quotation marks omitted). Courts have recognized a liberty interest based on some "generalized due process right to choose one's field of private employment," but that right is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). The line of cases establishing a liberty interest in pursuing a chosen profession "'all deal[] with a complete prohibition of the right to engage in a calling[.]'" *Franceschi v. Yee*, 887 F.3d 927, 938 (9th Cir. 2018) (quoting *Conn*, 526 U.S. at 292). Because this vocational liberty interest is not a fundamental right, the Court needs only to determine "whether the legislation has a 'conceivable basis' on which it might survive constitutional scrutiny." *Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999); *see also id.* at 1031 n.5 ("The [Supreme] Court has never held that the 'right' to pursue a profession is a *fundamental* right, such that any state-sponsored barriers to entry would be subject to strict scrutiny.").

AB 931 certainly is not a "complete prohibition" on Plaintiffs' ability to pursue their chosen profession. Nothing in Plaintiffs' FAC comes close to suggesting that Wisner is unable to continue practicing as an attorney. *See* FAC ¶ 16. AB 931 only narrowly impacts Wisner's ability to share fees with ABS firms. Plaintiffs' argument for the right to pursue a chosen profession hinges on a self-serving qualification: "on terms that serve clients' interest." TRO App. at 23. Plaintiffs cite no authority for the specific proposition that the right to follow a chosen profession includes on whatever terms the professional chooses. "This contention has no merit for the obvious reason that" a prohibition on sharing fees with ABS firms "does not operate as a complete prohibition on his ability to practice law, which it must to violate substantive due process." *Franceschi*, 887 F.3d at 938.

Furthermore, AB 931 has a rational basis. The purpose behind the legislation is to ensure that an attorney's legal judgment, and not profit, guides legal decisions. Existing rules prohibit nonlawyers from owning a financial stake in California law firms for this reason. *See* Cal. Rule Prof. Conduct 5.4(d). The basis for adding Section 6156 of the California Business and Professions Code serves a well-established interest in regulating attorney conduct and in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
|---|---|---|---|
| Title | R Brent Wisner, et al. v. Rob Bonta, et al. | Page | 13 of 16 |

maintaining ethical behavior to protect consumers. *See*, *e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 ("In addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed professions."); *Jacoby & Meyers*, 852 F.3d at 191 (holding New York's interest in regulating non-lawyer investments plainly survived rational basis review); *Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1385 (7th Cir. 1992) (holding that a rule prohibiting nonlawyer partnership in firms was within the legitimate interest of the state in governing the legal profession).

Plaintiffs are unlikely to succeed on and fail to raise serious questions as to the merits of their substantive Due Process claim.

### 6. Full Faith & Credit Clause Claim

The Full Faith and Credit Clause provides that: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. Art. IV, § 1. Plaintiffs contend that AB 931 violates the Full Faith and Credit Clause by "refusing to give effect to the valid public acts" of Arizona. TRO App. at 24. Plaintiffs specifically identify Arizona Rule of Professional Conduct 1.5(e) as the applicable public act.[5]

First, Plaintiffs provide no authority that the Arizona Rule of Professional Conduct is a "public Act[]" within the meaning of the Full Faith and Credit Clause. The only two cases that Plaintiffs cite in their briefing are unavailing on this point. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 222 (1998) (determining that a Michigan court decree did not apply to evidentiary issues in a lawsuit brought by parties in a Missouri court under Full Faith and Credit principles); *Hughes v. Fetter*, 341 U.S. 609 (1951) (deciding the narrow question of whether a Wisconsin statute, which created a right of action only for deaths caused in the state, violated the Full Faith and Credit Clause by foreclosing a cause of action created by an Illinois wrongful death act).

Second, even if the Court assumed that the Arizona court rule was a "public Act[]" within the meaning of the Full Faith and Credit Clause, Plaintiffs claim likely fails under *Giannini*, 911

---

[5] Arizona Rule of Professional Conduct 1.5(e) provides that "[t]wo or more firms jointly working on a matter may divide a fee paid by a client" if four criteria are met (i.e., fee agreement is disclosed to client in writing, client consents in writing, the total fee is reasonable, and the division of responsibility among firms is reasonable). *See* A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.5(e). The Rule does not make specific mention of whether the firms are in-state, out-of-state, traditional, or an alternative business structure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
|---|---|---|---|
| Title | **R Brent Wisner, et al. v. Rob Bonta, et al.** | Page | **14** of **16** |

F.2d at 360. In *Giannini*, the plaintiff asserted that the California local rule requirement limiting membership in the bars of certain federal courts to members in good standing with the California State Bar violated the Full Faith and Credit Clause. The plaintiff asserted that because he was a member of the New Jersey and Pennsylvania bars, a retesting requirement violated the Full Faith and Credit Clause. *Id.* at 360. The Ninth Circuit rejected this argument, holding that plaintiff's "claim lacks merit because no act, record or judicial proceeding, in New Jersey or Pennsylvania, states that [plaintiff] is entitled to practice law in California." *Id.* The same is true here. Arizona Rule of Prof. Conduct 1.5(e) does not state that an Arizona law firm with nonlawyer members is *entitled* to split fees with a California law firm. It merely provides the requirements that must be satisfied if two firms decide to split fees in Arizona. *See* A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.5(e) ("Two or more firms jointly working on a matter *may* divide a fee [].").

The Court does not find that Plaintiffs are likely to succeed on the merits of their Full Faith and Credit Clause claim.

**B.      Irreparable Harm**

In light of the Court's assessment of the first and most important *Winter* factor, the Court need not consider the other factors. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("Thus a 'court need not consider the other factors' if a movant fails to show a likelihood of success on the merits."). Nonetheless, the Court will briefly address them.

To obtain injunctive relief, Plaintiffs must demonstrate that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). This is true under either the four-part *Winter* test or the sliding scale approach articulated in *Cottrell*. Plaintiffs contend they will suffer irreparable harm in several ways, absent a TRO: "deprivation of constitutional rights, the threat of monetary penalties, State Bar discipline including disbarment, and the destruction of a lawfully formed business." TRO App. at 25. While a showing of success on the merits of constitutional claims "usually demonstrates [that a plaintiff] is suffering irreparable harm no matter how brief the violation," *Baird*, 81 F.4th at 1040, for the reasons discussed above, Plaintiffs have not made such a showing.

Plaintiffs' remaining assertions of irreparable injury do not justify interim injunctive relief. Wisner contends that absent a TRO, he and his law partners "face a credible threat that continuing to operate under the current agreements after January 1, 2026 will subject [them] to State Bar investigation, discipline, and statutory penalties." Wisner Decl. at ¶ 15. The harm Plaintiff identifies is speculative and is neither immediate nor irreparable. Plaintiffs also contend they will suffer "harms to ongoing representations and to clients' trust and expectations that cannot be fully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-11358-DMG (AJRx)** | Date | December 30, 2025 |
|---|---|---|---|
| Title | *R Brent Wisner, et al. v. Rob Bonta, et al.* | Page | **15** of **16** |

remedied by later monetary damages." Wisner Decl. at ¶ 13. Generally, "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed Enter., LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Here, the only evidence before the Court is a single affidavit with conclusory statements about the potential disruptive effects of AB 931 to Plaintiffs' reputations. *See* Wisner Decl. at ¶¶ 13–14. Absent "sufficient support in facts," the Court cannot conclude there is irreparable harm based on reputational injury. *See Am. Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (declining to find irreparable harm where plaintiffs' evidence in support were conclusory affidavits from its own executives); *Herb Reed*, 736 F.3d at 1250 (concluding district court's analysis of irreparable harm was conclusory where there was no evidence in the record of likely harm to reputation absent an injunction).

Lastly, it is well-settled that economic injury alone is not irreparable harm that justifies issuance of a TRO. "Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015); *see also Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 519 (9th Cir. 1984) ("[A] party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature."). Plaintiffs' alleged harms pertaining to civil penalties, disruption of contracts, and business restructuring, are economic in nature, and cannot form the basis for irreparable injury. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202–03 (9th Cir. 1980) (holding that the district court abused its discretion when it found irreparable injury based on monetary injuries).

As Plaintiffs fail to show a likelihood of irreparable harm, this factor weighs against issuing a TRO.

**C.**　**Balance of Equities and Public Interest**

When the government is a party, the final two preliminary injunction factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Plaintiffs must still "establish that 'the balance of equities tips in [their] favor.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). But "[i]n exercising their sound discretion, courts of equity should pay particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

First, Plaintiffs argue it is always in the public interest to prevent constitutional violations. Reply at 29–30. In the absence of a likelihood of success on the merits of the constitutional claims,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 25-11358-DMG (AJRx) | Date | December 30, 2025 |
| Title | R Brent Wisner, et al. v. Rob Bonta, et al. | Page | 16 of 16 |

however, the Court cannot rest its conclusion on this well-worn premise. *See Baird*, 81 F.4th at 1042 ("A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor.").

Second, Plaintiffs argue that the immediate public consequences of denied relief are "disruption to ongoing representation of thousands of clients," "emergency restructuring of professional relationships," and "a chill on California lawyers' ability to participate in multistate litigation teams." *Id.* at 30. The Court recognizes that AB 931 will impact Plaintiffs' current business model. But when "an injunction is requested which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Stormans*, 586 F.3d at 1139 (internal citation and quotation marks omitted). Notably, Plaintiffs acknowledge that "[n]o one disputes that California has a significant interest in regulating the bar or that rules like CRPC 5.4 serve a legitimate purpose." Reply at 29. Plaintiffs assure that they "do not argue for nonlawyer control of law practice." *Id.* at 29–30. And Plaintiffs do not challenge the legitimacy of California's interest in prohibiting nonlawyer ownership in California law firms (i.e., Rule 5.4(d)). AB 931's prohibition on fee sharing with out-of-state ABS firms closes a loophole to protect that very interest. "The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982).

Accordingly, the Court concludes that the balance of equities and the public interest weigh against issuance of a TRO.

## IV.
## CONCLUSION

In light of the foregoing, Plaintiffs' *Ex Parte* Application for Temporary Restraining Order and request for an Order to Show Cause why a preliminary injunction should not issue are respectfully **DENIED**.

**IT IS SO ORDERED.**